# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E-2 JEFFRY A. FELICIANO, JR.**
**United States Army, Appellant**

ARMY 20140766

Headquarters, I Corps
Andrew J. Glass, Military Judge (arraignment)
Samuel A. Schubert, Military Judge (trial)
Colonel Randall J. Bagwell, Staff Judge Advocate (pre-trial)
Lieutenant Colonel Christopher A. Kennebeck, Acting Staff Judge Advocate (post-trial)

For Appellant:  Lieutenant Colonel Charles D. Lozano, JA; Major Christopher D. Coleman, JA; Captain Jennifer K. Beerman, JA (on brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Major Daniel D. Derner, JA; Captain Steve T. Nam, JA (on brief).

22 August 2016

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

We discuss three issues in this appeal.[1]  First, we address appellant's assigned errors that the evidence is legally and factually insufficient.  After reviewing the record, we find the evidence both legally and factually sufficient.  Next, we determine that appellant's two convictions for attempted sexual assault were unreasonably multiplied when there was only a single attempt.  Accordingly, we conditionally dismiss one of the specifications.  Finally, we discuss the military

---

[1] Appellant also personally raised several issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).  Except for appellant's claim of unreasonable multiplication of charges, the matters raised by appellant warrant neither discussion nor relief.

judge's instructions to the panel on sex offender registration. As we find the military judge did not commit error, we order no relief.

At a general court-martial, appellant pleaded guilty to one specification of disrespect towards a non-commissioned officer, one specification of disobeying a non-commissioned officer, two specifications of wrongfully using marijuana, and one specification of being disorderly, in violation of Articles 91, 112a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 891, 912a, 934 (2012) [hereinafter UCMJ]. Contrary to his pleas, an officer and enlisted panel convicted appellant of two specifications of attempted sexual assault in violation of Article 120, UCMJ. The court-martial sentenced appellant to be discharged from the Army with a bad-conduct discharge, to be confined for one year, to forfeit all pay and allowances, and to be reduced to the grade of E-1. The convening authority approved the sentence as adjudged.

## BACKGROUND

On 22 January 2011, appellant, Specialist (SPC) Schwartz and Private (PV2) KF went out drinking. As the night out concluded, SPC Schwartz drove the trio back to the barracks. En route, they were pulled over by the police. Specialist Schwartz barely passed a breathalyzer test. The officer released them after determining that SPC Schwartz was the *most* sober individual. They then drove back to the barracks, stopping to buy more alcohol. When they returned to the barracks, appellant and PV2 KF continued drinking. Eventually, all three went to bed in appellant's bed. Specialist Schwartz, however, eventually left the bed to sleep in a nearby chair. Specialist Schwartz awoke a short time later to see appellant on top of PV2 KF. Appellant was holding himself up with one hand while "starting to pull his britches down" with the other. Specialist Schwartz testified that PV2 KF's "britches" were around her knees. Later he answered the question, "where were her pants?" by saying "By her knees." He also testified that she was saying "no, no, no" and that she was in "a state of unconsciousness" and was "passed out." SPC Schwartz confronted appellant and told appellant that "what he was doing was rape" and "that if he continued along they would definitely get him for rape. . . ." Appellant responded by saying "You know what? You're right" and got off of PV2 KF.

Private KF was not called by the government. She testified briefly for the defense. Appellant did not testify.

2

## LAW AND ANALYSIS

### A. *Factual and Legal Sufficiency*

In accordance with Article 66(c), UCMJ, we review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (internal citations omitted); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). In resolving questions of legal sufficiency, we are "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are [ourselves] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325.

Appellant's claim that the evidence is legally and factually insufficient boils down to questioning the credibility of SPC Schwartz. By the time of trial, SPC Schwartz had been chaptered out of the Army for using marijuana. The defense called five witnesses who said SPC Schwartz had a reputation for being untruthful. Additionally, the defense elicited from SPC Schwartz that he was a reluctant witness and that he was testifying, at least in part, in order to get the per diem accorded to travelling witnesses. The government responded that none of the reputational witnesses were aware of SPC Schwartz ever lying to them, and that he was entirely honest when directly confronted.

The following exchange between the defense counsel and SPC Schwartz demonstrates his bluntness while testifying:

> Q: And you've already testified that you're not employed at all so you're not getting any money from an employer?
>
> A: No, sir.
>
> Q: Now, you are getting per diem for participating in this trial, aren't you?
>
> A; Yes, sir.
>
> Q: So they're paying you a few hundred dollars to come out here and be present?

A: I guess. I haven't been told anything really about any money.

Q: And outside in this waiting room just a few minutes ago you said "I don't care about this. I'm just doing this for the money?"

A: I don't care about this. Even when [appellant and PV2 KF] were in my life, they were menial [sic] people to me.

Q: And you're just doing this for the money?

A: I'm doing this to tell the truth. Also for the money.

Q: Get a few hundred extra dollars?

A: Oh, yeah. Everybody can use some money.

A short while later, the trial counsel attempted to rehabilitate SPC Schwartz and give him an opportunity to explain why he was testifying. The trial counsel was only partially successful:

Q: Mr. Schwartz, why are you testifying today?

A: Well, I told that girl back in 2011 that I would do whatever she decided. I mean, it took quite a while for her to decide what she was going to do. And I feel that it's right to testify for her. But at the same time, I do need the money. I am having a baby and I am unemployed. So yes, I do need the money.

Certainly, appellant's view that SPC Schwartz's testimony presents clear evidence of bias is a reasonable one. However, on the other hand, SPC Schwartz's lack of defensiveness may also be viewed as a display of unusual candor. Specialist Schwartz did not shy away from the allegation of bias.

In *United States v. Crews* we discussed the relative disadvantage of an appellate court in attempting to assess credibility from a cold transcript:

The deference given to the trial court's ability to see and hear the witnesses and evidence—or "recogni[tion]" as phrased in Article 66, UCMJ—reflects an appreciation that much is lost when the testimony of live witnesses is converted into the plain text of a trial transcript. While

4

> court-reporter notes may sometimes reflect a witness's gesture, laugh, or tearful response, they do not attempt to reflect the pauses, intonation, defensiveness, surprise, calm reflection, or deception that is often apparent to those present at the court-martial. A panel hears not only a witness's answer, but may also *observe* the witness as he or she responds. For instance, a transcript may state "I am showing the witness prosecution exhibit 13 for identification" but will leave unstated the witness's demeanor—whether surprise, recognition, or dread, when reviewing or confronted with evidence.
>
> To say that an appellate court is at a relative disadvantage in determining questions of fact as compared to a trial court is to state the obvious.

*United States v. Crews*, ARMY 20130766, 2016 CCA LEXIS 127, at *11-12 (Army. Ct. Crim. App. 29 Feb. 2016). Similarly, in *United States v. Davis*, 75 M.J. 537, 546 (Army Ct. Crim. App. 2015) (en banc), we noted that "the degree to which we 'recognize' or give deference to the trial court's ability to see and hear the witnesses will often depend on the degree to which the credibility of the witness is at issue." At least as far back as 1990, we discussed the degree of deference given to a trial court's ability to see the witnesses. *United States v. Johnson*, 30 M.J. 930, 934 (A.C.M.R. 1990) (inartfully stating that we "hesitate to second-guess" a trial court's findings that depend on credibility determinations).

Put differently, we are required to make credibility determinations on appeal, but those determinations are made with the "admonition" that we recognize the trial court's superior position in making those determinations. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Thus, while we give no deference to the factual sufficiency *decisions* of the trial court, *Id.,* our assessment of the evidence must be sifted through a filter that recognizes our inferior fact-finding viewpoint.

With this recognition, we assess SPC Schwartz to be credible. Accordingly we affirm the findings as factually and legally sufficient in all but one regard. As alleged, appellant was charged with, and found guilty of, attempted sexual assault by pulling down PV2 KF's pants *and underwear*. The record is devoid of any evidence, regardless of credibility, regarding whether appellant pulled down PV2 KF's underwear and that part of the specification is therefore legally insufficient. Accordingly, we will provide relief in our decretal paragraph.

*B. Unreasonable Multiplication of Charges*

Appellant was convicted of attempted sexual assault under the theory that PV2 KF was incapacitated and under the theory that appellant was attempting to commit a sexual assault by bodily harm. At trial, while appellant successfully objected to the two offenses as being unreasonably multiplied for sentencing, he never objected to the offenses as being unreasonably multiplied for findings. Additionally, while the two offenses appeared to have been charged in the alternative, (to address SPC Schwartz's perhaps conflicting testimony that PV2 was both unconscious and saying "no"), the government never explicitly stated so. Accordingly, this case falls outside our superior court's decision in *United States v. Elespuru*, 73 M.J. 326, 329-30 (C.A.A.F. 2014)(dismissing a specification where the government states it was charged in the alternative.).

Therefore, appellant has forfeited any error. Additionally, the detailed motion practice on merging the specifications for sentencing show that appellant was at the threshold–if not crossing it–of waiving the error. In short, there was no error by the military judge, plain or otherwise. Nonetheless, as an exercise of our discretionary authority under Article 66(c) we will notice the issue and provide relief.

We find the *Quiroz* factors weigh in favor of dismissing one specification. *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001). Specifically, we give great weight to our determination that a conviction for two specifications of attempted sexual assault unreasonably exaggerated appellant's criminality.

Accordingly, we *conditionally* dismiss Specification 1 of Charge I, which alleged an attempted sexual assault while PV2 KF was substantially incapable of apprising the nature of the sexual act. *See United States v. Britton*, 47 M.J. 195, 203 (C.A.A.F. 1997)(J. Effron concurring); *United States v. Hines*, 75 MJ __ , 2016 CCA LEXIS 439, *7-8 fn4 (Army. Ct. Crim. App. 27 Jul. 2016); *United States v. Woods*, 21 M.J. 856, 876 (A.C.M.R. 1986). Our dismissal is conditional on Specification 2 of Charge I surviving the "final judgment" as to the legality of the proceedings. *See* Article 71(c)(1) (defining final judgment as to the legality of the proceedings).

*C. Sentencing Instructions on Sex Offender Registration*

At the presentencing proceedings, appellant introduced two unsworn statements. The first unsworn statement consisted of training certificates and family photos.[2] The second unsworn statement was read by appellant's counsel and consisted entirely of the following:

---

[2] Government counsel did not object to the use of photos as an unsworn statement or the unsworn statements of *others* (as contained in various training certificates) being introduced as the unsworn statement *of the accused*.

"I am Jeffrey A. Feliciano, Junior. I am a registered sex offender." This is the panel's findings on Charge I and that is a phrase that Private Feliciano will now say the[] rest of his life. He will not be permitted to pick [his child] up from school, or attend school sporting events. He is, for the rest of his life, a sex offender.

The military judge then gave the panel sentencing instructions. Over defense objection, the instructions included the following:

The accused's unsworn statement included the mention that the accused will have to register as a sex offender. An unsworn statement is a proper means to bring information to your attention, and you must give it appropriate consideration. Your deliberations should focus on an appropriate sentence for the accused for the offenses of which the accused stands convicted. Under DOD instructions, when convicted of certain offenses, including an offense here, the accused may have to register as a sex offender with appropriate authorities in the jurisdiction in which he resides, works, or goes to school. Such registration is required in all 50 states; though the requirements may differ between jurisdictions. Thus, specific requirements are not necessarily predictable.

It is not your duty to attempt to predict sex offender registration requirements, or the consequences thereof.

While the accused is permitted to address these matters in an unsworn statement, these possible collateral consequences should not be part of your deliberations in arriving at a sentence. Your duty is to adjudge an appropriate sentence for this accused based on the offenses for which he has been found guilty that you regard as fair and just when it is imposed and not one whose fairness depends upon possible requirements of sex offender registration, and the consequences thereof, at certain locations in the future.

7

    In short, the military judge permitted the accused in his unsworn statement to raise the issue of sex offender registration, and then instructed the panel not to consider the information when deliberating on a sentence.  Given the brevity of appellant's unsworn statement, the only portion of appellant's statement that the panel was instructed to consider during deliberations was "I am Jeffrey A. Feliciano, Junior."  Nonetheless, this instruction was not error and was consistent with our superior court's decision in *United States v. Talkington*, 73 M.J. 212, 218 (C.A.A.F. 2014).

    In *Talkington*, our superior court decided that sex offender registration is:  1) a collateral effect of findings not sentencing; and 2) "is a consequence . . . that is separate and distinct from the court-martial process."  *Id*. at 217 (internal citations and quotations omitted).  The *Talkington* court then found no error in the military judge having told the panel that sex offender registration "should not be a part of your deliberations . . . ."  *Id*. at 214, 218.

    The court in *Talkington* was fully aware of the dilemma this caused.  "[T]here is a 'tension between the scope of pre-sentencing unsworn statements and the military judge's obligation to provide proper instructions.'"  *Id*. at 216 (internal citations omitted).  However, the court did not address the tension because it was not raised.  *Id.*  This case presents two concerns about the current state of the law.

    First, in cases such as this one, the net effect of the military judge's instructions is to tell the panel to ignore the accused's unsworn statement.  At this stage of trial a panel will often be familiar with curative instructions and how they come to pass (i.e. someone made a mistake).  When the military judge tells the panel they should not consider the accused's statements about sex-offender registration it resembles a curative instruction.  The danger is that a panel infers from the tailored instruction that the accused was trying to subvert the sentencing rules.  That is, by telling the panel to ignore what the accused just stated, the panel may be left with the impression that the accused's statement was impermissible.[3]  Moreover, a panel at sentencing which has just rejected an accused's theory of the case may be predisposed to adopt such a viewpoint.  Here, to the extent that appellant may be

---

[3] The panel was instructed that the accused's statements "were permissible." However, in the context of an entire trial, where matters are admitted based on rules of evidence, the members may find it perplexing that the accused is permitted to raise matters that the military judge then instructs them to disregard.  And, even if the members can set aside this dissonance, they may still be left with the impression that the accused was using a technicality to get impermissible information before them.  There is nothing in the trial experience that would explain to panel members why it is not error to present information that they are not supposed to consider.

seen as having invited this risk, he was informed of the military judge's instructions only after he made the unsworn statement.

Second, while correct, it is unusual for a military judge to allow inadmissible information to come in front of the panel only to then tell the panel to ignore it. The alternative–prohibiting the information from coming in the first instance–would appear to be preferable.[4] As the court discussed in *Talkington*, this is the turbulence caused from the convergence of two unrelated lines of cases. *Id.* at 213, 215. ("This Court has explained that while the right of allocution includes the right to present evidence that is not relevant as extenuation, mitigation, or rebuttal, the military judge may 'put the information in proper context by effectively advising the members to ignore it.'").

As *Talkington* acknowledges, this is a problem created entirely by case law, and is contrary to Rule for Courts-Martial [hereinafter R.C.M.] 1001(c)(2)(A), which limits the accused's unsworn statement to matters in extenuation, mitigation, or in rebuttal. *See also* Military Rules of Evidence [hereinafter Mil. R. Evid.] 1101 (rules of evidence applicable to sentencing); 402 (irrelevant evidence is inadmissible). It would also appear to be tautological that there is little to be gained by allowing the introduction of inadmissible information. The military judge is the presiding officer at a court-martial. R.C.M. 103(15); Article 26, UCMJ. The current state of the law would appear to elevate the right of the accused to admit irrelevant information over the military judge's authority to exclude that same information under the rules. In a case where the accused is only informed of the military judge's instructions after having made the statement, this may be to the detriment of the accused.

In our view, the "tension" described in *Talkington* is best resolved by allowing the military judge to limit unsworn statements to the matters allowed under the rules. Such a resolution is per se not prejudicial, is in accord with the rules for court-martial, and properly reflects the military judge's role as the presiding officer. The status quo, where the military judge is prohibited from enforcing the rules for courts-martial, is at least problematic. Additionally, such an interpretation prevents the prejudice to an accused that may arise when a panel is told to give no weight to portions of an accused's unsworn statement.

---

[4] Consider the following: Were a military judge to prevent an accused from mentioning sex offender registration during an unsworn statement, such an action will almost certainly be harmless error. Since the panel may be instructed to ignore the information during deliberations, there cannot be prejudice from excluding in the first instance what the panel would be told to ignore in the second.

Nonetheless, the resolution of this issue here is entirely determined by our superior court's decision in *Talkington.* As the military judge's actions were entirely in accord with *Talkington*, there is no error, and appellant is not entitled to any relief.

**CONCLUSION**

The finding of guilty of Specification 1 Charge I is *conditionally* DISMISSED. This court AFFIRMS only so much of the finding of guilty of Specification 2 of Charge I as finds that:

> [appellant] did, at or near Joint Base Lewis-McChord, Washington, on or about 23 January 2011, attempt to commit the offense of aggravated sexual assault, to wit: penetrating Private (E-2) [KF]'s vulva with his penis, by causing bodily harm to her, to wit: pulling down the pants of the said Private [KF] with the specific intent to engage in a sexual act with Private [KF], and that the accused's actions would have resulted in the commission of the offense but for the intervention of Specialist (E-4) R.S.

The remaining findings of guilty are AFFIRMED.

Applying the factors set out by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we are confident that reassessment is appropriate. There is no change to the penalty landscape because the military judge had already merged the two specifications of Charge I for sentencing. Reassessing the sentence on the basis of the noted error, the remaining findings of guilty, and the entire record, we AFFIRM the sentence as approved by the convening authority. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge CAMPANELLA and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

10