# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39664**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Ethan J. WALTON**
Air Force Academy Cadet, U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 October 2020

————————————

*Military Judge:* Thomas J. Alford.

*Approved sentence*: Dismissal, confinement for 30 days, and a reprimand. Sentence adjudged 20 November 2018 by GCM convened at the United States Air Force Academy, Colorado.

*For Appellant:* Major M. Dedra Campbell, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before MINK, KEY, and ANNEXSTAD, *Appellate Military Judges*.

Senior Judge MINK delivered the opinion of the court, in which Judge KEY and Judge ANNEXSTAD joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MINK, Senior Judge:

A general court-martial composed of a military judge convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement (PTA), of two specifications of making a false official statement, in violation of Article 107,

Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 907, and one specification of wrongful use of cocaine on divers occasions, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.[1] The military judge sentenced Appellant to a dismissal, confinement for 60 days, and a reprimand. In accordance with the sentence limitation in the PTA, the convening authority approved only 30 days of confinement but otherwise approved the sentence as adjudged.

The sole issue raised by Appellant on appeal is whether the military judge abused his discretion by excluding attachments to Appellant's unsworn statement. We also consider whether Appellant is entitled to relief due to facially unreasonable appellate delay. We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

On or about 14 April 2018, Appellant, who was a cadet at the United States Air Force Academy, snorted cocaine that had been provided to him by his roommate, Air Force Cadet (AFC) HV. Appellant ingested the cocaine while sitting in AFC HV's truck in Colorado Springs, Colorado. On 16 April 2018, Appellant and AFC HV were both selected for a random urinalysis. Appellant's urine sample tested positive for benzoylecgnonine, the metabolite of cocaine. The concentration of benzoylecgnonine in Appellant's urine measured at 1,501 nanograms per milliliter (ng/mL), exceeding the Department of Defense cutoff of 100 ng/mL. AFC HV also tested positive for benzoylecgnonine.

During the weekend of 11–13 May 2018, Appellant traveled to Las Vegas, Nevada, where he stayed with AFC KE and AFC BH at the residence of AFC GS. Unaware of his positive urinalysis test result from April and believing that he had avoided detection of his initial cocaine use, Appellant again ingested cocaine on 11 May 2018. Appellant obtained this cocaine from an individual on the Las Vegas strip and then snorted it in the bathroom of a bar.

On 14 May 2018, after Appellant returned to the Air Force Academy, Appellant and AFC HV were contacted via text message by their cadet squadron commander and told that they needed to meet with him. Appellant and AFC HV then agreed to lie that they may have tested positive for cocaine because they ate a cookie or candy received from an unknown man in Colorado Springs. Later that same day, Appellant was interviewed by a special agent from the Air Force Office of Special Investigations (AFOSI). After being informed of his rights pursuant to Article 31, UCMJ, 10 U.S.C. § 831, Appellant waived his

---

[1] Unless otherwise noted, all references in this opinion to the Uniform Code of Military Justice and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

rights and then told the agent the false story that he did not knowingly use cocaine and may have tested positive because he had eaten a cookie given to him by an unknown male on the street in Colorado Springs near Cowboys Night Club.

Pursuant to *United States v. Bickel*,[2] Appellant was subjected to a second urinalysis on or about 15 May 2018, which resulted in another positive result for cocaine. After receiving the results of this second urinalysis, AFOSI re-interviewed Appellant on 30 May 2018. Again Appellant was advised of his rights pursuant to Article 31, UCMJ, which he waived. Appellant then told security forces investigator BB that there were no other cadets or military members that he met or who accompanied him on his trip to Las Vegas. Appellant knew this statement was false because three other cadets had accompanied him to Las Vegas. Appellant was charged with making a false official statement for this claim as well as for claiming he received the cookie from an unknown man.

During presentencing proceedings at his court-martial, Appellant sought to introduce a written unsworn statement with three documents attached: (1) a seven-page legal opinion by the Administrative Law Directorate, Office of the Air Force Judge Advocate General (OpJAGAF) 2018-3 (18 Apr. 2018), *Cadet Discharges*, discussing recoupment laws pertaining to Air Force Academy cadets involuntarily discharged for serious misconduct; (2) a four-page printout entitled "Students with criminal convictions have limited eligibility for federal student aid" from the Federal Student Aid, Office of the U.S. Department of Education website; and (3) a two-page printout entitled "Federal Student Aid at a Glance" dated 2018–2019, also from the Federal Student Aid, Office of the U.S. Department of Education website. The trial counsel objected to the three attachments and to one paragraph of Appellant's written unsworn statement in which Appellant discussed the possibility that the cost of his tuition for the Air Force Academy would be recouped from him and the potential difficulty Appellant would face in obtaining federal financial aid with a drug conviction. The paragraph stated:

> While I know my parents are always there for me, they cannot be a financial safety net for me. I know that I will have to put myself through school if I ever want to complete my degree and pursue my dream of becoming an engineer. On its own, my federal conviction will make getting a job to earn the money to both live and go to school difficult. Because I am now convicted of a federal drug offense, the Department of Education guidelines make clear my ability to get federal financial aid for school is also significantly jeopardized. I will have to work for every penny

---

[2] 30 M.J. 277 (C.M.A. 1990).

to get by. I am also aware that, because I am a cadet, there is a possibility that the Air Force could recoup $50,000 for each year of my education and the opportunities offered to me by the Academy—it could go well into six figures based on my two-and-a-half years here. I know this is a serious possibility because I have been briefed that JAA recommends recoupment for "serious misconduct"and the Secretary of the Air Force has to make the final determination. This has definitely made me realize the gravity of what I have done and I know I will have to work even harder to climb my way out and into the light of success.

Referencing the decisions in *United States v. Talkington*, 73 M.J. 212 (C.A.A.F. 2014), and *United States v. Grill*, 48 M.J. 131 (C.A.A.F. 1998), the military judge overruled the trial counsel's objection to the paragraph in Appellant's written unsworn statement. However, the military judge sustained the objection to the three attachments. Relying on Rule for Courts-Martial (R.C.M.) 1001 and *United States v. Daniels*, No. ACM 38371, 2014 CCA LEXIS 769 (A.F. Ct. Crim. App. 14 Oct. 2014) (per curiam) (unpub. op.), the military judge ruled the three attachments were inadmissible because none were statements of the Appellant and each referred to collateral consequences.

Without the three attachments, Appellant's written unsworn statement, including the paragraph quoted above, was admitted as a defense exhibit. The trial counsel then objected to the military judge considering any discussion of the collateral consequences when deciding on a sentence for Appellant. The military judge responded by stating that he would give the information "the weight that it is due."

During his oral unsworn statement, without any further objection by the trial counsel, Appellant also told the military judge:

With the help of family, my girlfriend and her family I'm already on the path to achieve my dreams. The road ahead will not be easy, particularly with the financial obstacles of paying my own way. Student loans being in jeopardy because of my drug conviction. And the rest that I will be forced to pay the Air Force over $100,000 in recoupment.

## II. DISCUSSION

### A. Exclusion of Attachments to Unsworn Statement

#### 1. Law

We review a military judge's decision to admit or exclude sentencing evidence for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235

(C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). A military judge abuses his discretion when (1) the findings of fact upon which he bases his ruling are not supported by the evidence of record; (2) he uses incorrect legal principles; or (3) his application of the correct legal principles to the facts is clearly unreasonable. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

A court-martial is "to concern [itself] with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration." *United States v. Griffin*, 25 M.J. 423, 424 (C.M.A. 1988) (citation omitted). "A collateral consequence is '[a] penalty for committing a crime, in addition to the penalties included in the criminal sentence.'" *Talkington*, 73 M.J. at 215 (alteration in original) (internal quotation marks, footnote, and citation omitted).

**2. Analysis**

Appellant asserts that the military judge committed prejudicial error by excluding the attachments to his written unsworn statement addressing the possibility of recoupment of tuition costs and ineligibility for federal financial aid. Appellant argues that by excluding the attachments, the military judge curtailed his "nearly unrestricted rights" to make an unsworn statement, even though Appellant was able to address the same information in both his written and oral unsworn statements.

Despite Appellant's assertions to the contrary, the military judge did not commit prejudicial error by excluding the attachments to Appellant's unsworn statement. The plain language of R.C.M. 1001(c)(2)(C) permits an unsworn statement given "by the accused," his counsel, or both. The documents Appellant sought to attach to his unsworn statement are neither a statement by Appellant nor by counsel on his behalf. *See, e.g.*, *Daniels*, unpub. op. at *15 (where this court concluded "that the military judge did not abuse his discretion in excluding a statement, not written by the appellant that contained otherwise-inadmissible information from a collateral consequence of a court-martial conviction").

Moreover, consistent with R.C.M. 1001(c), the military judge did not preclude Appellant from commenting on his concerns about the impact of the court-martial on possible recoupment of the cost of his Air Force Academy education or his eligibility for student loans, which Appellant brought to the attention of the military judge in both his written unsworn statement admitted by the military judge as a defense exhibit and his oral unsworn statement. We conclude that the military judge did not abuse his discretion by excluding the documents attached to Appellant's unsworn statement.

Appellant further argues that potential impact of his sentence on recoupment of his Air Force Academy tuition is akin to the impact on retirement benefits addressed in *Talkington*, because recoupment is a consequence of the sentence rather than the conviction. *See* 73 M.J. at 217. We do not agree that the deprivation of military retirement benefits resulting from a punitive discharge addressed in *Talkington* is analogous to the speculative impact of a court-martial conviction or a punitive discharge on whether or not Appellant might later be required to repay the cost of his Air Force Academy tuition or under what circumstances Appellant may or may not be eligible for federal student loans. Consequently, as the military judge correctly concluded, those issues constituted collateral matters. Again, we find that the military judge did not abuse his discretion by excluding the documents attached to Appellant's unsworn statement.

Even assuming *arguendo* that the military judge erred by excluding the documents attached to Appellant's unsworn statement, Appellant has failed to establish prejudice under the facts of this case. "When there is error in the admission of sentencing evidence, the test for prejudice 'is whether the error substantially influenced the adjudged sentence.'" *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (quoting *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009)). We consider four factors when determining whether an error had a substantial influence on the sentence: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* (citations omitted).

We find that the balance of these four factors weighs in favor of the Government. The Government's case was strong, supported by a stipulation of fact and a guilty plea inquiry both of which described the facts and circumstances of the offenses to which Appellant pleaded guilty, though the Defense's case also had strong points regarding Appellant's efforts at rehabilitation. The materiality of the evidence was extremely limited because of the similar information included in Appellant's written and oral unsworn statements, and the quality of the evidence was not really in question. Further, the trial defense counsel, with Appellant's explicit consent, asked the military judge to impose only a dismissal in this case. We conclude that even if the military judge erred by excluding the documents attached to Appellant's written unsworn statement, the error would not have had a substantial influence on the sentence imposed.

**B. Post-Trial Delay**

**1. Additional Background**

Although Appellant does not raise post-trial delay as an error, we note that Appellant's case was initially docketed with this court on 4 April 2019, and therefore, this opinion was not issued within 18 months.

**2. Law**

"We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citing *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004); *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003)). In *Moreno*, the United States Court of Appeals for the Armed Forces (CAAF) established a presumption of facially unreasonable delay when the Court of Criminal Appeals does not render a decision within 18 months of docketing. *Id.* at 142. Where there is such a delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Id.* at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004) (per curiam)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533).

However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In *Moreno*, the CAAF identified three types of cognizable prejudice for purposes of an Appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations omitted).

**3. Analysis**

In this case, we find no oppressive incarceration because Appellant's appeal has not resulted in any reduction in his term of confinement. Similarly, where the appeal does not result in a rehearing on findings or sentence, Appellant's ability to present a defense at a rehearing is not impaired. *Id.* at 140. As for anxiety and concern, the CAAF has explained "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* Appellant has asserted no such particularized anxiety or concern, and we discern none.

In this case, the delay in issuing the court's opinion exceeded the 18-month *Moreno* standard by less than two weeks. We do not find the delay so egregious as to adversely affect the perceived fairness and integrity of the military justice system. *See Toohey*, 63 M.J. at 362.

Recognizing our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court