Judge RYAN
delivered the opinion of the Court.
We granted Appellant’s petition to review the following issue:
WHETHER THE MILITARY JUDGE ERRED BY INSTRUCTING THE MEMBERS THAT CONSIDERATION OF SEX OFFENDER REGISTRATION IS “NOT A MATTER BEFORE THEM” AND “FRAUGHT WITH PROBLEMS.”
Sex offender registration is a collateral consequence of the conviction alone, not the sentence. While an accused may raise a collateral consequence in an unsworn statement, United States v. Rosato, 32 M.J. 93, 95-96 (C.M.A.1991), our precedent also makes clear that the military judge may instruct the members essentially to disregard the collateral consequence in arriving at an appropriate sentence for an accused. United States v. Barrier, 61 M.J. 482, 485-86 (C.A.A.F.2005); United States v. Tschip, 58 M.J. 275, 277 (C.A.A.F.2003). Because the military judge took such action here, the decision of the United States Air Force Court of Criminal Appeals (AFCCA) is affirmed.
I. FACTS
The facts relevant to the granted issue are few. Contrary to his pleas, a general court-martial composed of officer and enlisted members convicted Appellant of two specifications of attempted aggravated sexual assault and one specification of attempted abusive sexual contact, both in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880 (2012).[1] The underlying facts were that Appellant touched the victim’s breasts and penetrated her vagina while he believed that she was sleeping, and thus substantially incapable of declining participation. At the court-martial, in his unsworn statement during sentencing, Appellant stated: “I will have to register as a sex offender for life ... I am not very sure what sort of work I can find.”
The military judge instructed the members as follows on how to make use of Appellant’s unsworn statement:
The court will not draw any adverse inference from the fact that the accused has elected to make a statement which is not under oath. An unsworn statement is an authorized means for an accused to bring information to the attention of the court, and must be given appropriate consideration.
*214 The accused cannot be cross examined by the prosecution or interrogated by court members or me upon an unsworn statement, but the prosecution may offer evidence to rebut statements of fact contained in it. The weight and significance to be attached to an unsworn statement rests within the sound discretion of each court member. You may consider that the statement is not under oath, its inherent probability or improbability, whether it is supported or contradicted by evidence in the case, as well as any other matter that may have a bearing upon its credibility. In weighing an unsworn statement, you are expected to use your common sense and your knowledge of human nature and the ways of the world.
The accused’s unsworn statement included the accused’s personal belief that he would be administratively discharged if he did not received [sic] a punitive discharge and his belief that he would be required to register as a sex offender. An unsworn statement is a proper means to bring information to your attention, and you must give it appropriate considei’ation. Your deliberations should focus on an appropriate sentence for the accused for the offense of which the accused stands convicted.
However, as a general evidentiary matter, evidence regarding possible registration as a sex offender or the potential of an administrative discharge, and the consequences thereof, would be characterized as a collateral consequences [sic], and thus inadmissible outside of the context of an unsworn statement. This is so because your duty in sentencing is to adjudge an appropriate sentence for this accused, under these facts, in accordance with my instructions. Possible collateral consequences of the sentence, beyond those upon which you are instructed, should not be a part of your deliberations other than as I have earlier discussed.
As to sex offender registration requirements, they may differ between jurisdictions such that registration requirements, and the consequences thereof, are not necessarily predictable with any degree of accuracy. Even if such requirements were predictable, whether or not the accused will be or should be registered as a sex offender and whether he will be or should be administratively discharged is not a matter before you. Rather, determining an appropriate sentence for this accused, in accordance with my instructions, is your charge. In short, use of this limited information is fraught with problems. Therefore, after due consideration of the un-sworn statement and my prior instructions [on] the nature of an unsworn statement, the consideration and weight you give the reference is up to you in your sound discretion.
Appellant’s counsel objected to the military judge’s proposed instruction related to sex offender registration on the ground that its language:
goes beyond just a matter of letting the members know that this is evidence only appropriate through an unsworn statement or commentary in an unsworn statement and goes to another level really insinuating to the members that they should give it very little weight.
Defense counsel continued:
collateral matters that are brought up by the accused are matters that may be considered and that’s in light of [United States v. Grill, 48 M.J. 131 (C.A.A.F.1998), which] mentions nothing regarding the military judge in any regard trying to limit or dissuade them from paying attention to what’s in the accused’s unsworn statement.
The military judge overruled the objection explaining, “The court does not read [Grill] as broadly as you do.”
The maximum available sentence for Appellant’s convictions was forty-seven years and a dishonorable discharge; trial counsel argued for a sentence of not less than three years of confinement and a dishonorable discharge. Manual for Courts-Martial, pt. IV, paras. 4.e, 45.f(2), 45.f(5) (2008 ed.). The members adjudged a sentence of confinement for eight months, a bad-eonduet discharge, forfeiture of all pay and allowances, and reduction to E-1.
*215 The AFCCA affirmed the findings and sentence as approved by the convening authority. United States v. Talkington, No. 37785, 2013 CCA LEXIS 357, at *27, 2013 WL 1858584, at *8 (A.F.Ct.Crim.App. Apr. 26, 2013) (unpublished). On appeal to the AFCCA, Appellant did not raise the issue granted by this Court.
II. DISCUSSION
The Court reviews a military judge’s sentencing instructions for an abuse of discretion. Barrier, 61 M.J. at 485. In this context, a military judge abuses his discretion when the instructions are based on an erroneous view of the law or are not tailored to the ease’s facts and circumstances. United States v. Duncan, 53 M.J. 494, 499 (C.A.A.F.2000); United States v. Greaves, 46 M.J. 133, 139 (C.A.A.F.1997). Appellant argues that the military judge erred in his instruction related to Appellant raising the prospect of sex offender registration in his unsworn statement. In his view, the military judge abused his discretion in instructing the members that sex offender registration was irrelevant in arriving at the sentence in his case for two reasons. First, he asserts that consideration of sex offender registration during sentencing is required by this Court’s holding in United States v. Riley, 72 M.J. 115, 116-17 (C.A.A.F.2013). Brief for Appellant at 3-4, United States v. Talkington, 73 M.J. 212 (C.A.A.F.2014). Second, and relat-edly, he asserts that sex offender registration is similar to the impact of a punitive discharge on retirement benefits, which the Court has deemed akin to “a direct and proximate consequence of the sentence,” United States v. Griffin, 25 M.J. 423, 424 (C.M.A.1988), so that an instruction to the members to disregard it as a collateral conse-quenee was an abuse of discretion. We disagree.
The holding in Riley is inapposite in this separate context, and the military judge’s instructions were not an abuse of discretion under the precedent of this Court.
A
Rule for Courts-Martial (R.C.M.) 1001 permits the presentation of matters in extenuation, mitigation, or rebuttal by an accused through an unsworn statement. R.C.M. 1001(c). Despite the limits of this rule, the Court has, on the one hand, held that the right to present an unsworn statement is “generally considered unrestricted.” Rosato, 32 M.J. at 96. On the other hand, an un-sworn statement “may be tempered by appropriate instructions from the military judge.” Barrier, 61 M.J. at 484. This Court has explained that while the right of allocution includes the right to present evidence that is not relevant as extenuation, mitigation, or rebuttal, the military judge may “put the information in proper context by effectively advising the members to ignore it.” Id. at 486 (internal quotation marks omitted).
A collateral consequence is “‘[a] penalty for committing a crime, in addition to the penalties included in the criminal sentence.’ ” United States v. Miller, 63 M.J. 452, 457 (C.A.A.F.2006) (alteration in original) (quoting Black’s Law Dictionary 278 (8th ed. 2004) (citing as 1999 in original)), overruled in part by Riley, 72 M.J. at 120-21.[2] «ipjjg generai ruie concerning collateral consequences is that ‘courts-martial [are] to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration.’ ” Griffin, 25 M.J. at 424 (al- *216 teratíon in original) (quoting United States v. Quesinberry, 12 USCMA 609, 612, 31 C.M.R. 195, 198 (1962)). The collateral consequences of a court-martial do not constitute R.C.M. 1001 material, and while they may be referenced in an unsworn statement, Rosato, 32 M.J. at 96 (C.M.A.1991) (finding error where a military judge precluded an appellant from mentioning collateral consequences of a court-martial — a rehabilitation program — in an unsworn statement), they should not be considered for sentencing. United States v. McNutt, 62 M.J. 16, 19-20 (C.A.A.F.2005); see also Barrier, 61 M.J. at 486 (noting general preference for a “contextual instruction” for matters raised in an unsworn statement “rather than outright preclusion”); Tschip, 58 M.J. at 277 (permitting military judge to instruct that administrative discharge was a collateral matter when referenced in unsworn statement and that the members had discretion to disregard the reference to the collateral matter); Griffin, 25 M.J. at 424 (citing Quesinberry, 12 USCMA at 612, 31 C.M.R. at 198).
This is both because the proper focus of sentencing is on the offense and the character of the accused, R.C.M. 1001(b)-(c), and “to prevent ‘the waters of the military sentencing process’ from being ‘muddied’ by ‘an unending catalogue of administrative information.’ ” Rosato, 32 M.J. at 96 (quoting Quesinberry, 12 USCMA at 612, 31 C.M.R. at 198).[3]
To be sure, there is a “tension between the scope of pre-sentencing unsworn statements and the military judge’s obligation to provide proper instructions.” Barrier, 61 M.J. at 487 (Erdmann, J., concurring in the result). However, Appellant does not take issue with this precedent or ask us to overrule it. Instead he argues that sex offender registration is not a collateral consequence and, therefore, the precedent that recognizes a military judge’s discretion to put collateral consequences in a proper context does not apply in this case.
B.
Appellant argues that after this Court’s recent Riley decision, sex offender status is no longer a collateral consequence for any purpose. Riley is not so broad. In Riley, the trial defense counsel and the military judge did not inform the appellant that pleading guilty to kidnapping of a child would subject her to registration as a “sex offender,” and this Court held that “in the context of a guilty plea inquiry, sex offender registration consequences can no longer be deemed a collateral consequence of the plea.” Riley, 72 M.J. at 121.
Riley, however, was a guilty plea ease in which we sought to apply the reasoning of Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), to the different fact of sex offender registration. 72 M.J. at 121. Consequently, we considered the providence of a guilty plea where neither the defense counsel nor the military judge informed the defendant that pleading guilty would require sex offender registration. Riley, 72 M.J. at 118-19. We concluded that it was not a provident plea, and emphasized the requirement to ensure a “plea was a ‘knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences.’ ” Id. at 122 (alteration in original) (quoting Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).
Appellant now asks us to extend the Riley rationale to sentencing and prohibit a military judge from informing the members that they need not consider sex offender registration in arriving at a sentence. We decline this invitation for two reasons. First, unlike the context of a plea inquiry, nothing about the sentence has any impact on the requirement or duty to register as a sex offender. Sex offender registration operates indepen *217 dently of the sentence adjudged and remains a collateral consequence. See, e.g., 42 U.S.C. § 16911 (2012) (defining sex offender categories by the fact of conviction and the length of corresponding maximum sentences available, and not the sentences imposed); cf. United States v. Pena, 64 M.J. 259, 265 (C.A.A.F.2007) (“[T]he collateral administrative consequences of a sentence, such as early release programs, do not constitute punishment for purposes of the criminal law.”).
Moreover, and despite Appellant’s arguments to the contrary, sex offender registration is markedly different than retirement benefits, which can directly be affected by the imposition of a punitive.discharge — loss of military retirement benefits is one possible result of the sentence itself, as opposed to the conviction. See, e.g., Griffin, 25 M.J. at 424 (“[I]t is only in a theoretical sense that the effect a punitive discharge has on retirement benefits can be labeled collateral.... [T]he impact on benefits — whatever it may be — can only be a direct and proximate consequence of the sentence.”); see also Greaves, 46 M.J. at 139 (“[Wjhere a servicemember is perilously close to retirement ... a general collateral-consequences instruction disregarding the effects of a punitive discharge on retirement will not suffice.”). Thus, unlike the loss of retirement benefits, which would be a direct consequence of the imposition of a punitive discharge, there is no causal relation between the sentence imposed and the sex offender registration requirement. Whether Appellant received no punishment or the maximum available punishment he would be required to register as a sex offender based on the fact of his conviction alone.
Second, even after Padilla v. Kentucky, which considered the question whether it was ineffective assistance of counsel not to inform an accused of the deportation consequences of a guilty plea, a case whose reasoning we relied upon in Riley, 72 M.J. at 119-21, the Supreme Court continues to categorize sex offender registration as a collateral consequence. Chaidez v. United States, — U.S. -, 133 S.Ct. 1103, 1108 n. 5, 185 L.Ed.2d 149 (2013) (stating that the “effects of a conviction commonly viewed as collateral include ... sex offender registration”). While this has no bearing on our treatment of sex offender registration in the context of determining the providence of a guilty plea within the military justice system, we have been presented with no unique military reason to extend the reasoning of Padilla or Riley further. In the context of sentencing, Miller remains good law to the extent it recognizes that “the requirement that Appellant register as a sexual offender is a consequence of his conviction that is separate and distinct from the court-martial process.” Miller, 63 M.J. at 457.
C.
While Riley altered this Court’s treatment of sex offender registration in the context of the providence of a guilty plea, it did not alter this Court’s definition of a collateral consequence, and sex offender registration remains one outside the context of a guilty plea inquiry. See, e.g., United States v. Lindsey, No. ACM 37894, 2013 CCA LEXIS 503, at *16-*17, 2013 WL 3353908, at *5 (A.F.Ct.Crim.App. June 18, 2013) (unpublished) (distinguishing Riley’s conclusion that sex offender registration is not a collateral consequence in a guilty plea context from collateral consequences at sentencing).
Consequently, Appellant was permitted to mention sex offender registration in his unsworn statement. See Duncan, 53 M.J. at 499; Rosato, 32 M.J. at 96; see also United States v. Macias, 53 M.J. 728, 732 (A.Ct.Crim.App.1999) (concluding that a military judge abused her discretion when she failed to permit the accused to mention in an unsworn statement that the accused may have to register as sex offender for a non-sex offense crime). In turn, the military judge had discretion to “temper[]” the unsworn statement with “appropriate instructions.” Barrier, 61 M.J. at 484. “While the military judge’s discretion in choosing whether to instruct upon such ‘collateral’ matters is broad, he or she is required to give legally correct instructions that are tailored to the facts and circumstances of the case.” Duncan, 53 M.J. at 499.
*218 Relevant to the arguments raised on appeal, nothing in the instructions complained of was an inaccurate statement of either the law or the facts. Our precedent authorized the military judge to place the sex offender registration mentioned during Appellant’s unsworn statement in its proper context, by informing the members that Appellant was permitted to address sex offender registration in his unsworn statement, while also informing them that possible collateral consequences should not be part of their deliberations in arriving at a sentence. See Barrier, 61 M.J. at 485-86; Rosato, 32 M.J. at 96. Accordingly, the military judge did not abuse his discretion.
III. DECISION
The decision of the United States Air Force Court of Criminal Appeals is affirmed.

. Consistent with his plea, the panel acquitted Appellant of a charge of sodomy, in violation of Article 125, UCMJ, 10 U.S.C. § 925 (2Ó12).

. In contrast, a "[mlatter in extenuation of an offense serves to explain the circumstances surrounding the commission of an offense,” R.C.M. 1001(c)(1)(A), and a matter in mitigation is:
introduced to lessen the punishment to be adjudged by the court-martial, or to furnish grounds for a recommendation of clemency. It includes the fact that nonjudicial punishment under Article 15 has been imposed for an offense growing out of the same act or omission that constitutes the offense of which the accused has been found guilty, particular acts of good conduct or bravery and evidence of the reputation or record of the accused in the service for efficiency, fidelity, subordination, temperance, courage, or any other trait that is desirable in a servicemember.
R.C.M. 1001(c)(1)(B). All of the above examples of mitigation focus on particular traits of the accused, or prior punishment.

. Sex offender registration directly implicates these concerns of ‘‘minitrials” and "muddied waters” because the requirements for sex offender registration are not "precise” and "[e]ach state has different rules as to when registration is required and how compliance is monitored and measured,” which make it difficult for members to make an informed decision. United States v. Datavs, 70 M.J. 595, 604 (A.F.Ct.Crim.App.2011), aff'd on other grounds, 71 M.J. 420, 422, 426 (C.A.A.F.2012).