# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32519**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Joseph M. YEBBA**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 23 August 2019

————————————

*Military Judge:* Vance H. Spath.

*Approved sentence:* Bad-conduct discharge, confinement for 240 days, reduction to E-1, and a reprimand. Sentence adjudged 9 March 2018 by SpCM convened at Kadena Air Base, Okinawa, Japan.

*For Appellant:* Major Mark C. Bruegger, USAF.

*For Appellee:* Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before MAYBERRY, MINK, and RAMÍREZ, *Appellate Military Judges.*

Judge RAMÍREZ delivered the opinion of the court, in which Chief Judge MAYBERRY and Senior Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RAMÍREZ, Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement, of one specification of dereliction of duty, three specifications of signing official documents with false information, and two specifications of stealing military property

valued at more than $500.00, in violation of Articles 92, 107, and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, 921.[1] In exchange for his guilty plea and making restitution of $17,000, the convening authority agreed to refer Appellant's case to a special court-martial as part of the pretrial agreement. The military judge sentenced Appellant to a bad-conduct discharge, confinement for 240 days, reduction to E-1, and a reprimand. The convening authority approved the sentence as adjudged.

On appeal, Appellant asserts (1) the military judge committed reversible error by not considering mitigating evidence included in the stipulation of fact and (2) that he is entitled to appropriate sentence relief resulting from the Government's post-trial delay. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant entered active duty in the United States Air Force in July 2006. While attending technical school, he married. After his technical training, Appellant's first assignment was to Beale Air Force Base (AFB), California. However, after two years at Beale AFB and for humanitarian reasons, Appellant was reassigned to Westover Air Reserve Base, Massachusetts.

In February 2010, Appellant was officially divorced and admitted that he was aware of the finality of his divorce during this same time. He claimed he attempted to change his status with the finance office from "married with a dependent" to "not married with no dependents." However, it is unclear if Appellant actually attempted to make this change or whether the finance office failed to do so. In either event, the change never occurred.

Appellant continued to receive the basic allowance for housing (BAH) at the "with dependent" rate when he did not have any dependents and knew that he was not entitled to the "with dependent" rate. He continued to receive the "with dependent" BAH rate until June 2014, when he was due for a permanent change of station (PCS). Appellant claimed he first realized during this June 2014 timeframe that the finance office never made the change to his dependent status because he saw that he was still receiving pay and benefits as though he was still married and had a dependent. Appellant decided not to inform anyone of the error and chose to keep the additional funds he was receiving.

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.).

In April 2014, Appellant received his PCS orders to Kadena Air Base (AB), Okinawa, Japan. In preparation for his PCS, Appellant supplied information indicating his "wife" would not be traveling with him to Japan. Due to the information provided by Appellant, the orders included the statement, "dependent will not relocate; will remain at current PDS [Permanent Duty Station] location." When Appellant arrived at Kadena AB in June 2014, he filled out an official military document claiming he was still married and that his "spouse chose not to accompany" him. Specifically, he reviewed and signed an Air Force Form 594, which was an application and authorization to start, stop, or change basic allowance for quarters or dependency redetermination. Appellant reviewed and signed the document naming his ex-wife as his dependent and acknowledging that he would report any changes of his dependent's status or her residence immediately to the accounting and finance office. Appellant perpetuated this lie the entire time he was stationed at Kadena AB.

In addition to other offenses, Appellant pleaded guilty to two specifications of stealing military property valued at more than $500.00. The first specification of Charge III occurred during the time period between 13 February 2013 and 28 June 2014. The second specification of Charge III occurred during the time period between 29 June 2014 and 12 February 2018. While Appellant began receiving BAH at the "with dependent" rate to which he was not entitled long before 13 February 2013, the Government could not charge Appellant for the time period before 13 February 2013 because the five-year statute of limitations had run. During the uncharged timeframe from 15 February 2010 to 13 February 2013, Appellant received $11,590.29 of BAH at the "with dependent" rate. Nonetheless, Appellant conceded that it was an amount he received and which he was not entitled to, and included it as part of the stipulation of fact.

As to the first specification of Charge III (13 February 2013–28 June 2014), Appellant was assigned to Westover Air Reserve Base and admitted to stealing a total of $5,595.11 BAH at the "with dependent" rate. During the second specification of Charge III, Appellant was assigned to Kadena AB and admitted to stealing a total of $66,982.66. Thus, the total amount of BAH at the "with dependent" rate Appellant stole during the two charged timeframes was $72,577.77.[2]

---

[2] Had the Appellant been charged for all the monies he collected to which he was not entitled (15 February 2010–12 February 2018), but for the running of the statute of limitations, the total amount would have been $84,168.06.

Pursuant to the Air Force's "Tainted Claim Policy," the Defense Finance and Accounting Service (DFAS) generated an official debt against Appellant to recoup overpayment which was attributed to Appellant's actions. This specific amount represents all allowances Appellant received after the date of his divorce, including all allowances Appellant may otherwise have been entitled to receive as a military member without dependents. The total debt owed by Appellant, including interest, as calculated by DFAS as of March 2018 was $203,866.92. By the time of his court-martial, Appellant had paid DFAS $17,187.00.

Pursuant to a pretrial agreement, Appellant pleaded guilty and entered into a stipulation of fact which was introduced into evidence at his court-martial. The military judge explained the stipulation of fact was for the purpose of both findings and sentencing. The stipulation of fact included the amounts above.

Throughout the sentencing arguments, both sides discussed the various amounts of money owed to and/or belonging to the Government. As it relates to the issue before this court, during the Defense's sentencing argument, trial defense counsel stated,

> [J]ust yesterday [Appellant] was made aware by the government that he would likely be staring down the barrel of a debt in the amount of $203,000 for his actions. Your Honor, we've attached -- it's in the stipulation of fact. We had attached a spreadsheet provided by finance that explains the total debt and Your Honor doesn't need to spend time trying to make sense of it. The bottom line is that the total amount is $203,000, which is our understanding that that is both the amount that he improperly received as well as the amount that he properly received for the past eight years. That amount is something that [he's] going to have to pay off at some point in the future. He needs a good job, a quality job to be able to pay off that debt. [Appellant] needs to be able to seek employment with an employer who can provide him the income that he needs to get back on his feet.

As a response, and during the Government's sentencing argument, trial counsel argued,

> [D]efense spoke a lengthy time there about the collateral consequences here, the $200,000. Frankly, Your Honor, that's not what this court is really about. It's an administrative, a logistical thing outside of this what is -- this is Your Honor is a criminal matter, not a civil matter. We would ask Your Honor that

> you focus primarily on the charged timeframe. Of course, things that have happened before, things that may potentially happen after can be considered, but that's not really what this court is about. Certainly, because the accused's conduct is taken so seriously by the government that has reached this massive level of $200,000 he shouldn't be punished less lightly for that. It shouldn't be a consideration that he [be] punished less lightly because the government takes these kinds of things so seriously.

Subsequent to trial counsel's "collateral consequences" comment, trial defense counsel was given an opportunity to provide a surrebuttal argument. Defense counsel took the opportunity to discuss a conversation between Appellant and his ex-wife and to argue again that neither confinement nor a bad-conduct discharge were appropriate in this case. Defense counsel never objected to trial counsel's "collateral consequences" comment, nor did he make any argument about it in his surrebuttal argument.

At the conclusion of the sentencing arguments, the military judge deliberated regarding an appropriate sentence. After he returned to the courtroom, but prior to announcing sentence, the military judge stated,

> It's always tempting to comment on kind of your thought process, which I can't do, I just always remind myself collateral matters are just that as I tell the court members so often. They're not for me to consider, they're for a convening authority to consider.

The military judge then announced the sentence in this case, which included a bad-conduct discharge, confinement for 240 days, reduction to E-1, and a reprimand.

The date of Appellant's sentencing was 9 March 2018. The convening authority took action on 16 April 2018, and the case was docketed with this Court on 23 May 2018.

## II. Discussion

### A. Collateral Consequences

Appellant asserts that the military judge committed error by not considering mitigating evidence, in the form of the $203,866.92 debt, which was included in the stipulation of fact.

"We review a military judge's consideration of sentencing factors under an abuse of discretion standard." *United States v. Green*, 64 M.J. 289, 292 (C.A.A.F. 2007) (citing *United States v. McDonald*, 55 M.J. 173, 178 (C.A.A.F.

2001)). The military judge's comments on the sentence may be reviewed on appeal to determine whether the military judge relied on inadmissible matters in determining the sentence, *id.* at 291, or as alleged here, failed to rely on matters in determining the sentence.

Upon reviewing the record, it is clear to the court that Appellant has not shown the military judge's action amounted to an abuse of discretion.

A court-martial is "to concern [itself] with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration." *United States v. Griffin*, 25 M.J. 423, 424 (C.M.A. 1988). "A collateral consequence is '[a] penalty for committing a crime, in addition to the penalties included in the criminal sentence.'" *United States v. Talkington*, 73 M.J. 212, 215 (C.A.A.F. 2014) (alteration in original) (citations omitted). Therefore, the question presented before this court is whether the DFAS-generated official debt against Appellant to recoup overpayment pursuant to the Tainted Claim Policy is a collateral consequence of the crime committed in this case. For the reasons articulated below, we answer this question in the affirmative.

Similar to the reasoning in *Talkington*, which explained that "[s]ex offender registration operates independently of the sentence adjudged and remains a collateral consequence," here recoupment of overpayment pursuant to the Tainted Claim Policy operates independently of the sentence adjudged. *Id.* at 216–17. To illustrate this point, Appellant seems to concede that regardless of the sentence or even the conviction in this case, the Tainted Claim Policy would have applied to Appellant even had he been found not guilty at his court-martial. Furthermore, and unlike the potential monetary consequences of a sentence, recoupment of overpayments is an administrative act. *Talkington* also recognized that the requirement that an individual register as a sex offender is a consequence of his conviction and is separate and distinct from the court-martial process. *Id.* at 217. Here too, the recoupment of overpayment is separate and distinct from the court-martial process.

If this were a members case in which the question arose about potential civil forfeitures or administrative recoupment of overpayments associated with the criminal allegations, the appropriate reply from the military judge would ordinarily be "to reaffirm the idea that collateral consequences are not germane" to either the findings or the sentencing phase of a court-martial. *United States v. McNutt*, 62 M.J. 16, 19 (C.A.A.F. 2005). "The general rule concerning collateral consequences is that courts-martial are to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration." *Talkington,* 73 M.J. at 215 (internal citation and brackets omitted).

Although it was in a different context, our superior court has explained that "[a]dministrative recoupment of pay is separate from and not based upon criminal proceedings under the Uniform Code of Military Justice." *United States v. Olson*, 25 M.J. 293, 295 n.1 (C.M.A. 1987). In *Olson,* the Court found civil damages in a related civil action to be a collateral consequence of the appellant's conviction. *Id.* at 297.

Here, the $203,866.92 debt to DFAS is an administrative consequence to Appellant for falsely claiming he had a dependent and receiving additional money to which he was not entitled. As such, it is a collateral consequence and the military judge properly did not consider it for purposes of an appropriate sentence. Accordingly, Appellant has not shown the military judge's action amounted to an abuse of discretion.

**B. Post-Trial Delay**

Appellant asserts that he is entitled to sentence appropriateness relief resulting from the post-trial delay in this case as a due process violation, or in the alternative, under Article 66(c), UCMJ.

We review *de novo* whether an appellant has been denied his due process right to a speedy post-trial review and appeal. A presumption of unreasonable delay arises when the record of trial (ROT) is not docketed with the service court of criminal appeals within 30 days of action. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Here, the convening authority only took 38 days to take action in this case. However, the ROT was not docketed with this court within 30 days of action.

According to the affidavits submitted in this case, two copies of Appellant's ROT were sent from Kadena AB to Joint Base Andrews, Maryland[3], on 27 April 2018, 11 days after action, via FedEx delivery service. The numbered Air Force legal office, 5 AF/JA, sent Appellant's original ROT via United States Postal Service on 26 April 2018 and it was received at Joint Base Andrews on 11 May 2018, 25 days after action. The next 12 days are unaccounted for after the original ROT and the two copies arrived at Joint Base Andrews. While the Government exceeded the 30-day action-to-docketing deadline by seven days, and while these seven days cannot be directly attributed to the base legal office or the numbered Air Force, the processing of the mail is ultimately a Government responsibility. Although this delay is presumptively unreasonable, we discern no prejudice. *See Moreno*, 63 M.J. at 142.

---

[3] Joint Base Andrews is where the military justice section of the Air Force Legal Operations Agency as well as where this Court is located.

Hence, we find no violation of Appellant's due process right to timely post-trial processing and appeal. *See id.* at 136. The delay was not so egregious as to undermine the appearance of fairness in Appellant's case and the integrity of our military justice system. *See United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Nevertheless, recognizing our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we considered whether relief for post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002) ("Appellate relief under Article 66(c) should be viewed as the last recourse to vindicate, where appropriate, an appellant's right to timely post-trial processing and appellate review."). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), we find relief is not appropriate.[4]

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[4] The factors this court considered include: (1) how long the delay exceeded the standards set forth in *Moreno*; (2) what reasons, if any, the Government set forth for the delay and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) whether there is nonetheless evidence of harm (either to the appellant or institutionally) caused by the delay; (4) whether the delay has lessened the disciplinary effect of any particular aspect of the sentence and whether relief is consistent with the dual goals of justice and good order and discipline; (5) whether there is any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation; and (6) whether, given the passage of time, this court can provide meaningful relief in this particular situation.