# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32738**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Garrett J. PAGAN**
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 11 August 2023

————————————

*Military Judge*: Mark F. Rosenow.

*Sentence*: Sentence adjudged 23 June 2022 by SpCM convened at Barksdale Air Force Base, Louisiana. Sentence entered by military judge on 24 July 2022: Bad-conduct discharge and confinement for 60 days.

*For Appellant*: Major Abhishek S. Kambli, USAF.

*For Appellee*: Colonel Matthew D. Talcott, USAF; Lieutenant Colonel Thomas J. Alford, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, GRUEN, and MASON, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Chief Judge JOHNSON and Judge GRUEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MASON, Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with his pleas, of two charges with one specification each of wrongfully using cocaine, in violation of Article 112a, Uniform Code of Military

Justice (UCMJ), 10 U.S.C. § 912a.[1] A panel of officer members sentenced Appellant to a bad-conduct discharge and confinement for 60 days. The convening authority took no action on the findings or sentence.

Appellant raises one assignment of error: whether the military judge erred in his instruction to the members on a bad-conduct discharge. We find no error materially prejudicial to Appellant's substantial rights and affirm the findings and sentence.

## I. BACKGROUND

On 23 October 2021, Appellant was at a bar in Shreveport, Louisiana. While there, he was approached by a civilian and offered cocaine. Appellant accepted. He used a dollar bill to ingest the cocaine through his nose. Two days later, he provided a urine sample pursuant to the Air Force's Drug Demand Reduction Program. That urine sample tested positive for cocaine. On 4 April 2022, Appellant was convicted by a summary court-martial and sentenced to 14 days' confinement and reduction to the grade of E-1.

Three days before his summary court-martial, on 1 April 2022 Appellant again proceeded to a bar in Shreveport, Louisiana. He asked an individual at the bar if they had any "coke." The individual did. Appellant purchased cocaine from this individual. Appellant then went to the bathroom and used a dollar bill to ingest the cocaine through his nose. At some point after this use, Appellant provided a urine sample which tested positive for cocaine.

On 15 April 2022, merely days after being released from confinement as a result of his summary court-martial sentence, Appellant was again at a bar in Shreveport, Louisiana. There, he asked an individual at the bar if they had any "coke." The individual did. Appellant purchased cocaine. He then went to the bathroom and used a dollar bill to ingest the cocaine through his nose. At some point after this use, Appellant provided a urine sample which tested positive for cocaine.

On 22 June 2022, Appellant pleaded guilty to the uses of cocaine on 1 April 2022 and 15 April 2022 at a special court-martial which is the subject of this opinion. The military judge accepted Appellant's guilty pleas and entered findings consistent with Appellant's pleas. Appellant selected sentencing by officer members. Prior to the members arriving for the presentencing proceedings, the military judge conducted an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session with counsel. During this session, trial counsel requested a special instruction with regard to the bad-conduct discharge punishment option. Trial counsel

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

requested that instead of the standard instruction on a bad-conduct discharge, that the members be provided the following:

> A bad[-]conduct discharge is less severe than a dishonorable discharge and is designed as a punishment for bad conduct rather than as a punishment for serious offenses of either a civilian or military nature. It is also appropriate for an accused who has been convicted repeatedly of minor offenses and whose punitive separation appears to be necessary.

The military judge heard the parties' positions on this proposed instruction at that time. Trial defense counsel objected to this instruction arguing that the language was confusing and that it simply served to bolster the Government's argument. The military judge stated that he would wait until all the evidence was in before he finalized the instructions, at which time the military judge would finish his draft instructions and send it to the parties for review.

When the evidence for the presentencing phase of the trial was completed, the military judge conducted an Article 39(a), UCMJ, session to discuss the draft instructions he had provided to the parties. The section on the bad-conduct discharge punishment option prompted further discussion. The draft instruction stated:

> You are advised that the stigma of a punitive discharge is commonly recognized by our society. A punitive discharge will place limitations on employment opportunities and will deny the accused other advantages which are enjoyed by one whose discharge characterization indicates that he has served honorably. A punitive discharge will affect an accused's future with regard to his legal rights, economic opportunities, and social acceptability.

> This court may adjudge a bad-conduct discharge. Such a discharge deprives one of substantially all benefits administered by the Department of Veterans Affairs and the military establishment. A bad-conduct discharge is a severe punishment and may be adjudged for one who, in the discretion of the court, warrants severe punishment for bad conduct, even though such bad conduct may not include the commission of serious offenses of a military or civil nature.

> A bad-conduct discharge may also be adjudged for one, who in the discretion of the court, has been convicted repeatedly of minor offenses and whose punitive separation appears to be necessary, keeping in mind that the accused is to be punished only for

> the offenses of which the accused has been found guilty in this court-martial.

Noting the trial defense counsel's prior objections were preserved, the military judge stated,

> This is not what the [G]overnment had put forward, but it is a translation of the language that comes out of the Rules for Courts-Martial, and it is softened in a way so it doesn't say something like, "this would be appropriate," because I'm not going to get at the imprimatur of appropriateness or inappropriateness.

He then asked trial defense counsel if they had additional concerns to raise. Trial defense counsel proposed, "immediately before the final period of the highlighted portion—so the portion, 'in this court-martial, however, a bad[-]conduct discharge need not be adjudged,' or something to that effect." The military judge declined to add the requested language and explained his thought process stating:

> I understand that. I will tell you that where it's sitting right now, the way that this will get read is, "you may adjudge a bad[-]conduct discharge," which I would always give. The blue portion, "it may also be adjudged." And then, I am just highlighting to you, the immediate next thing I say after that one sentence is, "Finally, if you wish, this court may sentence the accused to no punishment." So that's kind of, in my mind, the coda that you're looking for is right there, because I'm emphasizing to them, no punishment at all. No punishment certainly includes no punitive discharge. So that answers my concern there, but I will hear from you if you have any proposed language, because I'll consider it before deciding on finalized language.

Trial defense counsel asked for a moment and conferred with his co-counsel. When they were finished, trial defense counsel stated, "Your Honor, I think we're comfortable with the language as outlined."

A few moments later, the members were brought back into the courtroom and the military judge instructed the members with the language reflected in the draft he and counsel had just discussed. Upon the completion of instructions, the military judge asked counsel if they objected to any of the instructions or requested additional instructions. Both trial counsel and trial defense counsel stated, "No, Your Honor."

## II. DISCUSSION

### 1. Law

We review a military judge's sentencing instructions for an abuse of discretion. *United States v. Talkington*, 73 M.J. 212, 215 (C.A.A.F. 2014) (citation omitted). "In this context, a military judge abuses his discretion when the instructions are based on an erroneous view of the law or are not tailored to the case's facts and circumstances." *Id.* (first citing *United States v. Duncan*, 53 M.J. 494, 499 (C.A.A.F. 2000); and then citing *United States v. Greaves*, 46 M.J. 133, 139 (C.A.A.F. 1997)).

"The military judge shall give the members appropriate instructions on sentence." Rule for Courts-Martial (R.C.M.) 1005(a); *United States v. Barnett*, 71 M.J. 248, 252 (C.A.A.F. 2012). Required instructions on sentence include:

> (1) A statement of the maximum authorized punishment that may be adjudged and of the mandatory minimum punish, if any;

> (2) A statement of the effect any sentence announced including a punitive discharge and confinement, or confinement in excess of six months, will have on the accused's entitlement to pay and allowances;

> (3) A statement of the procedures for deliberation and voting on the sentence set out in R.C.M. 1006;

> (4) A statement informing the members that they are solely responsible for selecting an appropriate sentence and may not rely on the possibility of any mitigating action by the convening or higher authority;

> (5) A statement that the members should consider all matters in extenuation, mitigation, and aggravation, whether introduced before or after findings, and matters introduced under R.C.M. 1001(b)(1), (2), (3), and (5);

> (6) A statement that the members shall consider the sentencing guidance set forth in R.C.M. 1002(f); and

> (7) Such other explanations, descriptions, or directions that the military judge determines to be necessary, whether properly requested by a party or determined by the military judge *sua sponte*.

R.C.M. 1005(e)(1)–(7).

Rule for Courts-Martial 1003(b) sets forth the authorized punishments a court-martial may adjudge. The sole punitive discharge available at a special court-martial is a bad-conduct discharge.

> A bad-conduct discharge applies only to enlisted persons and may be adjudged by a general court-martial and by a special court-martial which has met the requirements of R.C.M. 201(f)(2)(B). A bad-conduct discharge is less severe than a dishonorable discharge and is designed as a punishment for bad-conduct [sic] rather than as a punishment for serious offenses of either a civilian or military nature. It is also appropriate for an accused who has been convicted repeatedly of minor offenses and whose punitive separation appears to be necessary.

R.C.M. 1003(b)(8)(C).

"During presentencing proceedings or at such other time as the military judge may permit, any party may request that the military judge instruct the members on the law as set forth in the request." R.C.M. 1005(c). While counsel may request specific instructions, the military judge has substantial discretion in deciding on the instructions to give and whether the requested instruction is appropriate. This discretion must be exercised in light of correct principles of law as applied to the facts and circumstances of the case. *United States v. Miller*, 58 M.J. 266, 270 (C.A.A.F. 2003).

> Denial of a requested instruction is error if: (1) the requested instruction is correct; (2) "it is not substantially covered in the main charge"; and (3) "it is on such a vital point in the case that the failure to give it deprived [the] defendant of a defense or seriously impaired its effective presentation."

*Id.* (alteration in original) (citations omitted). For the military judge's refusal to instruct the members as requested to be error, all three prongs of this *Miller* test must be satisfied. *Id.*

### 2. Analysis

Appellant argues first that the military judge's instructions to the members on the bad-conduct discharge were confusing and conflicting with the standard instructions. The essence of Appellant's argument is that the military judge erred when he departed from the standard instructions as set forth in the *Military Judge's Benchbook* (*Benchbook*).[2] Suffice it to say, even if we did conclude (which we do not) that the military judge departed from the suggested *Benchbook* instructions in crafting his punitive discharge instruction, such departure standing alone does not constitute error. To be clear, the *Benchbook* is a restatement of law—it is not a substantive or binding source of law itself. As this court has previously explained:

---

[2] *Military Judges' Benchbook*, Dept. of the Army Pamphlet 27-9 (29 Feb. 2020).

> while the Department of the Army Pamphlet 27-9, *Military Judge's Benchbook* . . . is widely used as a reference guide, Air Force judges are not obligated to use it. Rather than rely blindly on this pamphlet, judges should ensure their instructions meet the requirements of the *Manual for Courts-Martial* . . . , the Rules for Courts-Martial, and case law.

*United States v. Greszler*, 56 M.J. 745, 746 (A.F. Ct. Crim. App. 2002). Instead, when evaluating allegations of sentencing instruction error, we look to the *Miller* factors to determine the propriety of the instruction. *Miller*, 58 M.J. at 270.

Even assuming *arguendo* that *Benchbook* "deviations" could themselves constitute error, here the military judge did not substantially deviate from the *Benchbook*. The following standard instructions are contained in the *Benchbook* and were substantially utilized by the military judge in this case:

> You are advised that the stigma of a punitive discharge is commonly recognized by our society. A punitive discharge will place limitations on employment opportunities and will deny the accused other advantages which are enjoyed by one whose discharge characterization indicates that (he) (she) has served honorably. A punitive discharge will affect an accused's future with regard to (his) (her) legal rights, economic opportunities, and social acceptability.

*Benchbook*, at 122.

> This court may adjudge a bad-conduct discharge. Such a discharge may deprive one of substantially all benefits administered by the Department of Veterans Affairs and the military establishment. A bad-conduct discharge is a severe punishment and may be adjudged for one who in the discretion of the court warrants severe punishment for bad conduct (even though such bad conduct may not include the commission of serious offenses of a military or civil nature.).
>
> . . . .
>
> . . . Finally, if you wish, this court may sentence the accused to no punishment.

*Benchbook*, at 123–24.

The crux of Appellant's argument and his chief complaint centers on the additional instruction the military judge added to the above including,

> A bad-conduct discharge may also be adjudged for one who in the discretion of the court has been convicted repeatedly of minor

offenses and whose punitive separation appears to be necessary, keeping in mind that the accused is to be punished only for the offenses of which the accused has been found guilty in this court-martial.

The addition of this language does not create confusion or contradiction as Appellant avers. This language is straightforward and is found nearly verbatim in R.C.M. 1003(b)(8)(C), the language the President set forth explaining a bad-conduct discharge.

Here, the military judge was aware of his duty to properly tailor his instructions to the facts and circumstances of the case in front of him. *Talkington*, 73 M.J. at 215. During the presentencing proceedings, evidence of Appellant's letter of counseling, nonjudicial punishment, record of vacation action of suspended nonjudicial punishment, as well as a prior summary court-martial conviction for the same misconduct as the charged offenses was presented. Seeing this, the military judge was well within his discretion to refer to the President's guidance in R.C.M. 1003(b) on a bad-conduct discharge and tailor his instructions to incorporate the guidance that most accurately reflected an issue reasonably raised by the evidence in this case. In other words, the military judge did not err when he utilized relevant and applicable law in his instructions to the members.

Appellant argues second that the instruction, particularly the additional language from R.C.M. 1003(b)(8)(C), improperly "bolstered" the Government's argument that *this* accused warranted a punitive discharge. The military judge was sensitive to this concern. Trial counsel's proposed instruction tracked with R.C.M. 1003(b) and read, "*It is also appropriate* for an accused who has been convicted repeatedly of minor offenses and whose punitive separation appears to be necessary." (Emphasis added). The military judge softened this language to read, "A bad-conduct discharge may also be adjudged." This instruction did not improperly bolster the Government's argument. The evidence reasonably raised an instruction on this issue. This clause of R.C.M. 1003(b)(8)(C) was applicable and an accurate statement of the law. Therefore, the military judge did not err in incorporating it into the instructions.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court