*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, HARRELL, and KORN
Appellate Military Judges

———————————

**UNITED STATES**
*Appellee*

**v.**

**Tavian J. DOUGLAS ROGAN**
Retail Services Specialist Second Class (E-5), U.S. Navy
*Appellant*

**No. 202400238**

———————————

Decided: 26 September 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Derek D. Butler

Sentence adjudged 1 March 2024 by a general court-martial tried at Kleber Kaserne, Kaiserslautern, Germany, consisting of officer and enlisted members. Sentence in the Entry of Judgment: reduction to E-1, confinement for 39 months, and a dishonorable discharge.

For Appellant:
*Benjamin A. Robles*
*Kimberly D. Hinson*

For Appellee:
*Lieutenant Erin H. Bourneuf, JAGC, USN*
*Major Mary C. Finnen, U.S. Marine Corps*

Senior Judge HARRELL delivered the opinion of the Court, in which Chief Judge DALY and Judge KORN joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

HARRELL, Senior Judge:

Appellant was convicted, contrary to his pleas, of one specification of attempted rape and one specification of attempted sexual assault in violation of Article 80, Uniform Code of Military Justice (UCMJ); and one specification of burglary in violation of Article 129, UCMJ.[1] Appellant asserts two assignments of error:

I. Appellant's convictions under Article 80, UCMJ, address a chain of events occurring in one location with one person over several minutes. Was this substantially one transaction that should be consolidated as an unreasonable multiplication of charges?

II. Appellant moved to admit evidence of and offer argument on the anti-recidivism laws that would apply due to his convictions as they relate to [Rules for Courts-Martial (R.C.M.)] 1001–1002. The military judge denied that motion citing *United States v. Talkington.* The prosecutor then argued for eighteen years' confinement in part to protect the public, and the judge instructed members to consider deterrence, rehabilitation, and protection of the public in imposing a sentence. Did the military judge violate Appellant's right to due process?

We answer both in the negative, find no prejudicial error, and affirm the findings and sentence.

---

[1] 10 U.S.C. §§ 880, 929. Appellant was also convicted of one specification of abusive sexual contact in violation of Article 120, UCMJ, one specification of assault with intent to commit sexual assault in violation of Article 128, UCMJ, and one specification of wrongful appropriation in violation of Article 121, UCMJ, though the military judge conditionally dismissed those charges and specifications after findings.

## I. BACKGROUND

Rebuffed by his girlfriend, Appellant set his sights on her roommate, Logistics Specialist Seaman (LSSN) Hotel.[2] Appellant took LSSN Hotel's keycard from her wallet, and he used it to unlock the door to her bedroom where she slept. He entered, sat on the floor, and watched LSSN Hotel sleep for hours as he dwelled on his sexual intentions. Finally resolved to go through with it, he took off his shorts and underwear, and he crept onto the bed.

LSSN Hotel awoke with Appellant on top of her, rubbing his erect penis on her thigh. Initially thinking that Appellant had mistaken her for his girlfriend, she told Appellant who she was, and she kept doing so. Appellant told her to "let it be,"[3] and he moved his face closer to hers. She screamed for her roommate, and she tried to push him off. Appellant then covered her mouth with his hand, pinned her arms, and sat across her stomach with a leg on both sides. He also grabbed LSSN Hotel's phone that was nearby, powered it off, and tossed it out of reach. LSSN Hotel struggled, but she had difficulty moving or breathing under Appellant's weight. She managed to wriggle her face free, and she pleaded with Appellant to stop. LSSN Hotel appealed to their friendship, and Appellant finally relented.

Among other offenses, the Government charged Appellant with one specification of attempted sexual assault for attempting to commit a sexual act upon LSSN Hotel when he knew she was asleep and one specification of attempted rape for attempting to commit a sexual act upon LSSN Hotel by using unlawful force. Before trial, Appellant moved to dismiss the attempted rape specification as unreasonably multiplied with the attempted sexual assault specification. The military judge deferred ruling until after findings. After Appellant was convicted of both, the military judge merged the two specifications for sentencing and instructed the members, "The offenses charged in Specifications 1 and 2 of Charge I are one offense for sentencing purposes. Therefore, in determining an appropriate sentence in this case, you must consider them as one offense."[4] The military judge also instructed that the maximum punishment to confinement was 30 years (20 years total for the two attempt offenses (instead of 20 years apiece) plus 10 years for the burglary).

Also before trial, Appellant moved for a preliminary ruling on admissibility of evidence of sex offender registration requirements during presentencing

---

[2] This is a pseudonym.

[3] R. at 719.

[4] R. at 1123.

should he be convicted. The military judge summarily ruled, "The Defense request to admit evidence of sex offender registration is denied. The Court will follow the guidance of [*United States v. Talkington*, 73 M.J. 212 (C.A.A.F. 2014)].[5]

During presentencing, Appellant told the members in an unsworn statement:

> I ask you to consider that even after turning myself in, the consequences of my actions will be there for the rest of my life. Under federal law I have to register as a sex offender. That law requires that my name, address, face and conviction will forever be online for the world to see. My life will never be the same. Every job I apply for, they'll know what I've done. Landlords will hesitate to give me a job--give me a lease, excuse me. I'll have limitations for housing, employment, education, and be judged by society forever.[6]

The military judge later instructed the members:

> The accused's unsworn statement included the accused's personal statements about sex offender registration. An unsworn statement is a proper means to bring information to your attention, and you must give it appropriate consideration. Your deliberations should focus on an appropriate sentence for the accused for the offense of which the--for the offenses of which the accused stands convicted. Under [Department of Defense] instructions, when convicted of certain offenses, including the offenses here, the accused must register as a sex offender with the appropriate authorities in the jurisdiction in which he resides, works or goes to school. Such registration is required in all 50 states, though requirements may differ between jurisdictions. Thus, specific requirements are not necessarily predictable. It is not your duty to try to attempt to predict sex offender registration requirements or the consequences thereof. While the accused is permitted to address these matters in an unsworn statement, these possible collateral consequences should not be part of your deliberations in arriving at a sentence. Your duty is to adjudge an appropriate sentence for this accused based upon the offenses for which he's

---

[5] App. Ex. LXX.

[6] R. at 1103–04.

been found guilty that you regard as fair and just when it is imposed and not on one whose fairness depends upon possible requirements of sex offender registration and the consequences thereof at certain locations in the future.[7]

## II. DISCUSSION

**A. The military judge did not abuse his discretion in his ruling on the Defense motion regarding an unreasonable multiplication of charges.**

Appellant argues that the specifications of attempted sexual assault and attempted rape represent "one incident involving one person that lasted several minutes without interruption. . . . This substantially unitary transaction should not be the basis of multiple specifications, which this Court should consolidate."[8] We disagree. Appellant preyed upon a sleeping victim. He then preyed upon an awake, actively resisting victim. We grant no relief to Appellant, who stands convicted of these separate offenses, separately chargeable by the Government, and reasonably so.

*1. Law*

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person."[9] "[T]he prohibition against unreasonable multiplication of charges addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion."[10] In *United States v. Quiroz*, the United States Court of Appeals for the Armed Forces (CAAF) endorsed a five-part test to determine whether the government has unreasonably multiplied charges:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?
>
> (4) Does the number of charges and specifications unreasonably increase the appellant's punitive exposure?

---

[7] R. at 1129–30.

[8] Appellant's Brief at 10–11.

[9] R.C.M. 307(c)(4).

[10] *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001).

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?[11]

The CAAF has also recognized:

[T]he concept of unreasonable multiplication of charges may apply differently to findings than to sentencing. . . [T]he charging scheme may not implicate the *Quiroz* factors in the same way that the sentencing exposure does. In such a case . . . "the nature of the harm requires a remedy that focuses more appropriately on punishment than on findings."[12]

"A military judge's decision to deny relief for unreasonable multiplication of charges is reviewed for an abuse of discretion,"[13] assessed as follows:

A military judge abuses her discretion when her findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law. The abuse of discretion standard requires more than a mere difference of opinion. The challenged action must be arbitrary, clearly unreasonable, or clearly erroneous.[14]

*2. Analysis*

The military judge ruled as follows:

Moving on to an unreasonable multiplication of charges, I am going to allow convictions for both to stay there, because I find that for findings purposes the act of her waking up and this con-

---

[11] *Id*. at 338.

[12] *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (quoting *Quiroz*, 55 M.J. at 339). *See also* Rule for Courts-Martial, *Manual for Courts-Martial, United States* (2023 ed.) 906(b)(12)(B) ("Where the military judge finds that the unreasonable multiplication of charges requires a remedy that focuses more appropriately on punishment than on findings, he or she may find that there is an unreasonable multiplication of charges as applied to sentence. If the military judge makes such a finding and sentencing is by members, the maximum punishment for those offenses determined to be unreasonably multiplied shall be the maximum authorized punishment of the offense carrying the greatest maximum punishment.").

[13] *Campbell*, 71 M.J. at 22 (citations omitted).

[14] *United States v. Ruiz*, No. 24-0158, 2025 CAAF LEXIS 656, at *7–8 (C.A.A.F. Aug. 8, 2025) (cleaned up).

tinuing is a significant distinct act that it's aimed at. So in look-
ing at *Quiroz*, is each charge and specification aimed at dis-
tinctly separate criminal acts, in terms of a finding purpose I
think that that is a significant-enough distinction, the awake
versus asleep and the use of force, to allow that to remain. The-
-does it misrepresent or exaggerate the appellant's criminality?
It does represent a separate decision to continue when there's a
significant change in the situation of the victim. So I think that
it does not. But does it unfairly increase the appellant's punitive
exposure? I would merge Specifications 1 and 2 for sentencing. I
think that punishments for them as separate offenses would un-
fairly increase the appellant's punitive exposure under an un-
reasonable multiplication of charges analysis. . . . I'm going to
tell [the members] to treat them as one for sentencing.[15]

The military judge did not abuse his discretion. We agree with his analysis
of the second and third *Quiroz* factors.[16] This is nothing like the classic exam-
ple of separately charging each blow in a single altercation.[17] Appellant at-
tempted to sexually assault a sleeping victim, and he was thwarted when she
awoke. That could have been the end of his predation, and thus the extent of
his criminality. But he formed a new intent—to rape an awake victim by
force—and he took new action to achieve that. Concluding that the fourth *Qui-
roz* factor, that of punitive exposure, weighed in Appellant's favor, the military
judge merged the specifications for purposes of sentencing, a decision squarely
within the range of choices reasonably arising from the applicable facts and
the law. Although Appellant correctly notes that the military judge did not ad-
dress the fifth *Quiroz* factor, that of prosecutorial overreach or abuse, we note
that "no single factor necessarily govern[s] the result."[18] Regardless, we discern
for ourselves no evidence of prosecutorial overreaching or abuse in the record.

**B. The military judge did not abuse his discretion in excluding evi-
dence of sex offender registration requirements.**

Appellant goes to creative lengths to maneuver around *United States v.
Talkington*, the CAAF's opinion that the military judge considered to so obvi-

---

[15] R. at 1054–55.

[16] The matter was before the military judge pursuant to a Defense motion, so the
military judge need not have specifically addressed the first factor.

[17] *See United States v. Morris*, 18 M.J. 450 (C.M.A. 1984).

[18] *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004).

ously dictate the outcome of the Defense motion that he did not care to elaborate. The military judge did no favors thereby,[19] though we agree that *Talkington* provides the framework by which to address this issue, and we conclude that the military judge did not abuse his discretion in ruling the evidence inadmissible.

In *Talkington*, the CAAF held:

> Our precedent authorized the military judge to place the sex offender registration mentioned during Appellant's unsworn statement in its proper context, by informing the members that Appellant was permitted to address sex offender registration in his unsworn statement, while also informing them that possible collateral consequences should not be part of their deliberations in arriving at a sentence.[20]

Here, the Defense sought to introduce *evidence* of sex offender registration requirements, rather than merely having Appellant mention it during his unsworn statement, and we are concerned with a ruling on admissibility, rather than the propriety of an instruction, but those distinctions are without a difference. However proposed to be brought to the members' attention, "[s]ex offender registration operates independently of the sentence adjudged and remains a collateral consequence,"[21] and "[t]he general rule concerning collateral consequences is that courts-martial are to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration."[22] And, directly counter to Appellant's argument that the evidence should have been admissible in mitigation, "[t]he collateral consequences of a court-martial do not constitute R.C.M. 1001 material, and . . . they should not be

---

[19] "A military judge's decision to admit or exclude evidence at sentencing is reviewed for an abuse of discretion." *United States v. Carter*, 74 M.J. 204, 206–07 (C.A.A.F. 2015) (citation omitted). "[W]here the military judge places on the record his analysis and application of the law to the facts, deference is clearly warranted. . . . However, the reverse is also true. If the military judge fails to place his findings and analysis on the record, less deference will be accorded." *United States v. Flesher*, 73 M.J. 303, 312 (C.A.A.F. 2014) (cleaned up).

[20] *United States v. Talkington*, 73 M.J. 212, 218 (C.A.A.F. 2014).

[21] *Id.* at 216–17 (citation omitted).

[22] *Id.* at 215 (cleaned up).

considered for sentencing."[23] If there is any question whether *Talkington*'s import has waned since it was decided, the CAAF has twice in recent years leaned on its holding.[24]

Appellant claims that the military judge's ruling handcuffed him from rebutting the Government's future dangerousness argument to the members. But the extent of that argument was two sentences by trial counsel—"Protect others from further crimes by the accused. It could have been anybody"[25]—the first, a quote of the law,[26] and the second, a quote of Appellant in a statement to a Naval Criminal Investigative Service agent that was admitted into evidence during trial on the merits.[27] This is a far cry from *Simmons v. South Carolina*, relied upon by Appellant, wherein the United States Supreme Court said, "The State may not create a false dilemma by advancing generalized arguments regarding the defendant's future dangerousness"—to justify a sentence to death—"while, at the same time, preventing the jury from learning

---

[23] *Id.* at 216 (citations omitted). R.C.M. 1001(d)(1) permits the defense to present matter in mitigation, which "is introduced to lessen the punishment to be adjudged by the court-martial, or to furnish grounds for a recommendation of clemency." R.C.M. 1001(d)(1)(B). The right to present such evidence is "[i]n contrast" to the irrelevance of collateral consequences. *Talkington*, 73 M.J. at 215 n.2.

[24] *See United States v. Palacios Cueto*, 82 M.J. 323, 327 (C.A.A.F. 2022) ("In *United States v. Talkington*, 73 M.J. 212, 213 (C.A.A.F. 2014), this Court held that a '[s]ex offender registration [requirement] is a collateral consequence of the conviction alone, not the sentence.' The Court further held that '[w]hile an accused may raise a collateral consequence in an unsworn statement, . . . the military judge may instruct the members essentially to disregard the collateral consequence in arriving at an appropriate sentence for an accused.' *Id.* (citations omitted)."); *United States v. Williams*, 85 M.J. 121, 126 (C.A.A.F. 2024) ("Importantly, this Court has recognized that an accused's sentence does not include collateral consequences of the accused's conviction, such as sex offender registration. *See United States v. Palacios Cueto*, 82 M.J. 323, 327 (C.A.A.F. 2022) ('"[s]ex offender registration requirement is a collateral consequence of the conviction alone, not the sentence"' (quoting *United States v. Talkington*, 73 M.J. 212, 213 (C.A.A.F. 2014) (alterations in original))).").

[25] R. at 1114.

[26] "In sentencing an accused . . . a court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces, taking into consideration . . . (C) the need for the sentence . . . (v) *to protect others from further crimes by the accused* . . . ." Article 56(c), UCMJ (emphasis added).

[27] "She just so happened to be that person to have to go through that. Like, it could have been any one of her roommates. You know? *It could have been anybody*." Pros. Ex. 2; App. Ex. XXXIX at 35–36 (emphasis added).

that the defendant never will be released on parole."[28] There was no such false dilemma here, and the members were not misled in any manner—neither by the Government nor the military judge. The members were properly instructed on the minimum and maximum punishments and the considerations in arriving at an appropriate sentence. Trial counsel's passing reference to one such consideration in conjunction with a statement of Appellant he considered relevant thereto in no way impinged upon Appellant's due process rights or suddenly transmogrified a collateral consequence to a direct one, relevant for the members' consideration.[29]

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[30]

The findings and sentence are **AFFIRMED**.



FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[28] 512 U.S. 154, 171 (1994) (plurality opinion).

[29] Even if there were error, we would find no prejudice after weighing the strength of the Government's sentencing case—consisting of evidence of the effects of Appellant's crimes upon LSSN Hotel and evidence of a prior civilian conviction for trespass—against the relative paucity of the Defense's case—consisting only of Appellant's unsworn statement. Further, assuming the materiality of the excluded evidence, its quality is low, given that Appellant only sought to present evidence of and "to argue that there is, in fact, a federal mandate. Whether states comply with that is not . . . something that the defense is going to get into." R. at 168. Therefore, the members would have remained unaware of the precise strictures to be imposed upon Appellant that he argues mitigates his future dangerousness.

[30] Articles 59 & 66, UCMJ.