# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————

### No. ACM 40091 (f rev)

————————

### UNITED STATES
*Appellee*

**v.**

### Dakota R. BAKER
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 23 January 2024

————————

*Military Judge*: Bryon T. Gleisner (pre-referral judicial proceeding); Elizabeth M. Hernandez (pretrial motions and arraignment); Christina M. Jimenez; Dayle P. Percle (remand).

*Sentence*: Sentence adjudged 4 March 2021 by GCM convened at Sheppard Air Force Base, Texas. Sentence entered by military judge on 16 March 2021 and re-entered on 4 October 2022: Dishonorable discharge, confinement for 15 months, and reduction to E-1.

*For Appellant*: Major Matthew L. Blyth, USAF.

*For Appellee*: Lieutenant Colonel Matthew J. Neil, USAF; Major John P. Patera, USAF; Major Brittany M. Speirs, USAF; Major Lecia E. Wright, USAF; Captain Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire; Alexis R. Wooldridge (legal intern).[1]

Before JOHNSON, ANNEXSTAD, and MERRIAM, *Appellate Military Judges*.

Judge MERRIAM delivered the opinion of the court, in which Chief Judge JOHNSON and Senior Judge ANNEXSTAD joined.

————————

[1] Alexis R. Wooldridge was a legal intern who was at all times supervised by an attorney admitted to practice before this court.

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

MERRIAM, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of three specifications of sexual abuse of a child, in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b, and one specification of receiving and viewing child pornography, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[2] The adjudged sentence was a dishonorable discharge, confinement for 15 months, and reduction to the grade of E-1.

Appellant raised three issues on appeal: (1) whether his sentence to a dishonorable discharge is inappropriately severe; (2) whether the convening authority violated Appellant's basic due process rights when she decided to take no action on sentence before allowing Appellant five days to respond to the victim's post-trial submission of matters in accordance with Rule for Courts-Martial (R.C.M.) 1106(d)(3); and (3) whether trial counsel's sentencing argument improperly referenced victim impact and criticized Appellant's apology when no victim impact evidence had been admitted.

We previously addressed Appellant's second assignment of error, holding the convening authority erred by not providing Appellant the opportunity to rebut matters submitted by the victim under R.C.M. 1106A, and remanding the record to the Chief Trial Judge, Air Force Trial Judiciary. *United States v. Baker*, No. ACM 40091, 2022 CCA LEXIS 523, at *9–10 (A.F. Ct. Crim. App. 6 Sep. 2022) (unpub. op.). Upon remand, the successor convening authority provided Appellant the required opportunity to respond to the victim's post-trial submission of matters and Appellant did so. The successor convening authority then signed a new Decision on Action memorandum, taking no action on findings or sentence, and the military judge issued a corrected entry of judgment.

Upon return of the record to this court, Appellant submitted a supplemental brief renewing his first and third assignments of error, providing additional argument regarding the former. Now considering Appellant's assignments of error, we find no error materially prejudicial to Appellant's substantial rights, and we affirm the findings and sentence.

---

[2] All references in this opinion to the UCMJ and to the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

## I. BACKGROUND

Appellant accessed the website Omegle.com (Omegle), an online chat service that paired users randomly with other users to communicate anonymously in a one-on-one digital chat session. On 8 March 2020, a few months after Appellant arrived at his first permanent duty station, Omegle paired Appellant with JA for a chat session. Though JA initially told Appellant she was 15 years old, later in the roughly 20-minute-long Omegle chat, JA admitted to Appellant she was only 8 years old. At some point during the Omegle chat, Appellant indicated to JA that he was a member of the United States Air Force.

Appellant and JA transitioned from Omegle, which does not require user registrations, to Instagram, another social media service that allows registered users to interact directly, but non-anonymously. After obtaining JA's Instagram handle, which referenced JA's interest in crafts, Appellant looked at pictures JA posted on her Instagram account, then began messaging her on Instagram. After reviewing the pictures of JA and her family, Appellant came to believe JA was, in fact, 8 years old. Appellant then asked JA the following questions via Instagram direct message: "Have you ever saw a d[*]ck in your life? . . . What if [a d[*]ck] was inside u? . . . R u horny?? . . . [and] R u touching your vagina?"

During this same Instagram conversation, JA told Appellant "It's okay if you want to see anything from me," and Appellant replied, "Your boobs." In response, JA sent to Appellant a photograph of herself with her shirt lifted up, revealing a bare and undeveloped chest and areola. Appellant responded to the photograph with the message, "You r 8 aren't u[?]" During his guilty plea inquiry, Appellant explained that this response was a reflection of the fact that though he knew JA was 8 years old, he had not imagined her body would look the way it did.

While still conversing with JA, Appellant used his cell phone to take and send to JA a photograph of his erect penis. JA mentioned she had a video of herself that Appellant assumed would be sexual in nature. Appellant asked JA to send him the video, JA did so, and Appellant viewed it. The video, which was less than 30 seconds long, depicted JA naked from the waist down, legs spread revealing her genitalia, and using her index finger to penetrate her labia and vagina.

**II. DISCUSSION**

**A. Whether Appellant's Sentence is Inappropriately Severe**

**1. Law**

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). This court "may affirm only . . . the sentence or such part or amount of the sentence, as [it] finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). Courts "assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although this court has broad discretion in determining whether a particular sentence is appropriate, and Article 66, UCMJ, empowers us to "do justice," we have no authority to "grant mercy" by engaging in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

"A dishonorable discharge should be reserved for those who should be separated under conditions of dishonor, after having been convicted of offenses usually recognized in civilian jurisdictions as felonies, or of offenses of a military nature requiring severe punishment." R.C.M. 1003(a)(8)(B). "A bad-conduct discharge is less severe than a dishonorable discharge and is designed as a punishment for bad-conduct rather than as a punishment for serious offenses of either a civilian or military nature." R.C.M. 1003(a)(8)(C).

A plea agreement with the convening authority is "some indication of the fairness and appropriateness of [an appellant's] sentence." *United States v. Perez*, No. ACM S32637 (f rev), 2021 CCA LEXIS 501, at *7 (A.F. Ct. Crim. App. 28 Sep. 2021) (unpub. op.) (footnote omitted).

"Sex offender registration operates independently of the sentence adjudged and remains a collateral consequence." *United States v. Talkington*, 73 M.J. 212, 216–17 (C.A.A.F. 2014) (citations omitted). A "[s]ex offender registration [requirement] is a collateral consequence of the conviction alone, not the sentence." *Id.* at 213.

In applying our statutory discretionary authority to approve only that part of a sentence that "should be approved," 10 U.S.C. § 866(d)(1), a legal error or deficiency is required. *United States v. Gay*, 75 M.J. 264, 268 (C.A.A.F. 2016) (first citing *United States v. Fagan*, 59 M.J. 238 (C.A.A.F. 2004); and then citing *United States v. Wheelus*, 49 M.J. 283 (C.A.A.F. 1998)); *see also United States v. White*, 2022 CCA LEXIS 344, at *47 (A.F. Ct. Crim. App. 10 Jun. 2022) (unpub. op.) ("Post-trial events may warrant sentence relief when a legal

deficiency or error exacerbates an otherwise appropriate sentence."). Although we consider all matters in the record, including sex offender registration, we may attribute "little weight to that fact." *White*, unpub. op. at \*46.

### 2. Analysis

Appellant's claim that his sentence to a dishonorable discharge is inappropriately severe rests on three main arguments: (1) the sentence does not "account for [Appellant's] mental struggles and their connection to the offenses;" (2) "the dishonorable discharge strips [Appellant] of benefits that are crucially important to his continued rehabilitation;" and (3) under the law of the state where he now resides, Appellant must register as a sex offender for 25 years and face decades of stigma as a sex offender.

Regarding mental health challenges, Appellant asserts the military judge failed to properly consider Appellant's mental health as "a matter in mitigation and extenuation to lessen the appropriate punishment." Though Appellant relies on mitigation evidence as to his mental health, including testimony from his mother that when she visited him just before the misconduct occurred Appellant "wasn't the same young man that left [her] house," the bulk of the evidence to which Appellant referred at trial regards his mental health evaluation and treatment in the months after the misconduct at issue in the case.[3]

Appellant offers minimal explanation or evidence for his assertion that the military judge "failed to consider" Appellant's mental health struggles when considering sentence, leaving us to presume Appellant is implicitly arguing that had the military judge considered the mental health issues, the sentence would have been different. Appellant's only concrete offering on this point is a brief footnote objecting that the military judge ruled he would consider only some of Defense Exhibit C—a one-page psychological assessment by Mr. JH—during sentencing. Appellant asserts this was an error, but claims he did not raise it "as a separate [a]ssignment of [e]rror because this [c]ourt may consider the entire record and should consider the entirety of Defense Exhibit C." Appellant thus appears to be asking us to consider a portion of Defense Exhibit C that the military judge chose not to admit due to reliability concerns.

Defense Exhibit C is an email from Mr. JH, the Director of Outpatient Services at Red River Hospital, to trial defense counsel summarizing some of the clinical observations and treatment plans in effect for Appellant at the time. In contrast with Defense Exhibit B, which was the report of a formal psychological evaluation conducted by a psychologist, and which the military judge admitted *in toto*, Defense Exhibit C appears to be a summary created by an

---

[3] Appellant expressly states he is not challenging the results of a sanity board convened under R.C.M. 706 that found him competent to stand trial.

administrator rather than a healthcare provider. The military judge declined to admit or consider clinical information contained in Defense Exhibit C based on reliability concerns and an insufficient foundation regarding what Defense Exhibit C purported to be and the knowledge and expertise, if any, of its sender. We have not been asked to consider whether Defense Exhibit C was properly not admitted and decline to find the unadmitted and unconsidered portions of Defense Exhibit C demonstrate Appellant's sentence is inappropriately severe.

The evidence admitted at trial indicates Appellant suffered from significant mental health difficulties after the misconduct at issue in this case was detected by authorities. It is unsurprising that the discovery by law enforcement and his military unit of Appellant's offenses against a young child would leave Appellant distraught, and perhaps severely so. What Appellant does not demonstrate is how those difficulties constituted extenuation or mitigation of the offenses sufficient to show his sentence is inappropriately severe. Moreover, at trial Appellant introduced evidence focusing his extenuation and mitigation case on his mental health challenges; we are confident the military judge considered the mental health challenges in arriving at the sentence.

Appellant also contends that a dishonorable discharge is inappropriately severe because it strips him of important benefits crucial to his rehabilitation. This contention is not supported by any substantive detail or explanation in the record. Appellant notes he received extensive mental health services in the months after his misconduct. He further observes that he underwent personal growth between the start of the investigation and sentencing and "[t]hat same growth should continue as he is released from confinement." But Appellant does not explain how or why the opportunity for such growth is prevented by a dishonorable discharge, instead proclaiming only that "the dishonorable discharge makes [growth] continuity unlikely" and "the military will ultimately not assist in [Appellant's] efforts to maintain a positive trajectory." Presumably, Appellant is asserting he will be unable to receive military healthcare following execution of his punitive discharge. But this would be generally true whether Appellant's punitive discharge was a bad-conduct discharge or dishonorable discharge. *See, e.g.,* 10 U.S.C. § 1074 (military medical care authorized for "members of the uniformed service" includes active duty, certain reserve component members, and certain members entitled to retired pay); 38 U.S.C. § 5303 (barring all benefits administered by the Department of Veterans Affairs for persons discharged as part of the sentence of a general court-martial). Thus, Appellant implicitly requests we disapprove *any* punitive discharge in order to preserve Appellant's access to military healthcare benefits, despite the fact that in his plea agreement he agreed that a punitive discharge *must* be adjudged. Under the circumstances of this case, we conclude disapproving a punitive discharge for the purpose of preserving military healthcare

benefits would amount to an act of clemency, which we may not grant. *Nerad*, 69 M.J. at 146.

After Appellant's case was returned to us following our remand, Appellant added a third basis for claiming his sentence is inappropriately severe: the requirement that he register as a sex offender.[4] Specifically, Appellant asserts that under applicable state law, he must register as a sex offender for 25 years and during this time is not permitted to live within 1,000 feet of a church, school, daycare, or youth center. Appellant states that due to sex offender registration, a sense of "constant surveillance" follows him everywhere, leaving him feeling defeated, and that sex offender status imposes a profound stigma on him. Appellant also asserts that, "when paired with the decades-long [stigma] of sex offender registration, the dishonorable discharge becomes all the more inappropriate."

We consider the fact contained in the record that Appellant is a registered sex offender, with various attendant restrictions and requirements, but we attribute little weight to that fact in this case. *White*, unpub. op. at *46. Though "[s]ex offender registration is a collateral consequence of the conviction alone, not the sentence," *Talkington*, 73 M.J. at 213, we recognize that post-trial events may warrant sentence relief when a legal deficiency or error exacerbates an otherwise appropriate sentence. *White*, unpub. op. at *47 (citing *Gay*, 75 M.J. at 269). But Appellant identifies no such error related to sex offender registration in this case; he simply asserts that sex offender registration renders the adjudged sentence inappropriately severe. As we noted in *White*, "[t]o the extent Appellant argues the [sex offender] registration requirements are onerous or unjust, a more effective avenue for recourse runs through his elected representatives and courts with jurisdiction over those requirements." Unpub. op. at *47.

Appellant seeks to have this court disapprove a dishonorable discharge as being inappropriately severe despite the fact less than six months after arriving at his first duty station he engaged in serious criminal misconduct, sexually victimizing an 8-year-old girl. Though Appellant was sentenced to the most severe form of discharge available for an enlisted service member at court-

---

[4] Our review under Article 66(d)(1), UCMJ, is generally confined to matters found in the "entire record" of trial. *United States v. Jessie*, 79 M.J. 437, 444–45 (C.A.A.F. 2020). Originally, the record of trial referred to sex offender registration only when the military judge confirmed with trial defense counsel that Appellant had been advised of "sex offender reporting and registration requirements resulting from a finding of guilty" of the child pornography specification. When, after our remand, the convening authority provided Appellant the required opportunity to respond to matters submitted by the victim, Appellant included specific details of sex offender registration requirements applicable to him. We conclude the matter is now properly part of the "entire record."

martial, Appellant's sentence to 15 months of confinement was far below the maximum confinement available for the offenses of which he was convicted. Appellant successfully negotiated a plea agreement with the convening authority that capped his confinement exposure to less than three percent of the maximum, and the adjudged sentence was to a term of confinement below even the plea agreement cap. During his unsworn statement to the military judge, Appellant specifically requested lower confinement and did not comment at all on the punitive discharge. Similarly, during sentencing argument, trial defense counsel focused solely on the confinement aspect of the sentence, not even mentioning discharge characterization. Having focused his efforts before and during trial on reducing his sentence to confinement, Appellant now asks this court to reduce a different aspect of his sentence, arguing the dishonorable discharge is inappropriately severe. Appellant's argument is belied by his own words to the military judge during his unsworn statement: "I know I deserve a severe punishment . . . ."

R.C.M. 1003(a)(8)(B) reserves a dishonorable discharge for "serious offenses." Appellant sexually abused a child through indecent language, including soliciting her to provide a picture of her naked chest, through sending an 8-year-old child a photograph of his erect penis, and through asking for, receiving, and viewing video child pornography created by his 8-year-old victim. During sentencing argument, trial defense counsel twice used the language of R.C.M. 1003(a)(8)(B), characterizing Appellant's actions as "a serious offense." We agree. Having reviewed the entire record, including all the matters submitted by Appellant in extenuation and mitigation, we find that Appellant's adjudged sentence was not inappropriately severe.

**B. Whether Trial Counsel's Sentencing Arguments Were Improper**

**1. Additional Background**

Appellant claims trial counsel's sentencing argument was improper in two ways: (1) by invoking victim impact when no evidence of victim impact was admitted; and (2) by arguing Appellant lacked remorse without the requisite foundation.

Regarding victim impact, Appellant observes JA did not testify during the presentencing hearing and the Government did not admit evidence regarding any impact Appellant's offenses had on JA. Appellant draws the court's attention to two statements made by trial counsel during her sentencing argument. Trial counsel began her sentencing argument by asserting:

> There is a very real victim in this case, JA, an 8-year-old girl, with her own family and her own community and her own aspirations and her own future. Those things aren't unique to [Appellant], and her life has been fundamentally altered by this

[A]irman's actions. She's had to pay a certain price for those actions.

Trial counsel later commented on purported victim impact when remarking on Appellant's apology and lack of remorse:

And going back to this personal statement of [Appellant], there is an apology to JA, and it's a one-line sentence. There is nothing in here that indicates he truly understands the impact that his actions have had on her. And if he doesn't understand that, there's nothing to say that he's been rehabilitated or that he doesn't deserve this harsh punishment, this dishonorable discharge, because [Appellant] was past a bad-conduct discharge the very first time he sent a lewd message to this girl, knowing she was 8 years old, and he was well past it every single act of misconduct after that.

In sentencing argument, trial defense counsel argued JA was already a broken person, arguing that she was a victim before Appellant's offenses. When trial counsel objected that the argument included facts not in evidence, trial defense counsel responded that it was a "reasonable inference based on human nature . . . common sense . . . and knowledge of . . . the ways of the world." Trial counsel's objection was overruled and trial defense counsel continued to argue that JA "woke up that morning already broken" and that there was "no evidence whatsoever of any impact [of Appellant's crimes] in this case."

On appeal, Appellant now objects—when his trial defense counsel did not—to trial counsel's reference to Appellant's brief apology to JA in Appellant's written unsworn statement: "[T]here is an apology to JA, and it's a one-line sentence. There is nothing in here that indicates he truly understands the impact that his actions have had on her."

### 2. Law

We review claims of improper argument de novo. *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citation omitted). When there is no objection during argument, we review for plain error. *Id.* (citation omitted). "The burden of proof under plain error review is on the appellant," who must show: "(1) that there is error; (2) the error is clear or obvious; and (3) the error results in material prejudice to a substantial right of the accused." *Id.* (quoting *United States v. Andrews*, 77 M.J. 393, 398, 401 (C.A.A.F. 2018)).

Improper argument "occurs when trial counsel oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *United States v. Sewell*, 76 M.J. 14, 21 n.3 (C.A.A.F. 2017) (internal quotation marks and citation omitted). Improper argument will yield relief only if the misconduct "actually impacted on

a substantial right of an accused (*i.e.*, resulted in prejudice).” *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005) (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)).

Our superior court “has consistently cautioned counsel to ‘limit’ arguments on findings or sentencing ‘to evidence in the record and to such fair inferences as may be drawn therefrom.’” *United States v. White*, 36 M.J. 306, 308 (C.M.A. 1993) (quoting *United States v. Nelson*, 1 M.J. 235, 239–40 (C.M.A. 1975)). “As a zealous advocate for the [G]overnment, trial counsel may ‘argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence.’” *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). In determining whether an argument is improper, the court is to view it in its entire context. *Baer*, 53 M.J. at 239.

Improper argument does not automatically lead to relief on appeal. *Fletcher*, 62 M.J. at 178. In *Fletcher* our superior court identified three factors to consider when determining whether the alleged prosecutorial misconduct prejudiced an appellant’s substantial rights by impacting the integrity of his trial: “(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction.” *Id.* at 184. When applying *Fletcher* to improper sentencing argument, this court considers whether “trial counsel’s comments, taken as a whole, were so damaging that we cannot be confident that the appellant was sentenced on the basis of the evidence alone.” *Halpin*, 71 M.J. at 480 (citations, alterations, and internal quotation marks omitted).

“[T]he lack of a defense objection is ‘some measure of the minimal impact of a prosecutor’s improper comment.’” *United States v. Gilley,* 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 396 (C.A.A.F. 1999)).

Appellant “faces a particularly high hurdle” to show plain error when the military judge is the sentencing authority. *See United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000). “Military judges are presumed to know the law and to follow it absent clear evidence to the contrary.” *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997) (per curiam)). “As part of this presumption we further presume that the military judge is able to distinguish between proper and improper sentencing arguments.” *Id.* The failure of the military judge to note improper argument on the record does not rebut the presumption that the military judge distinguished between proper and improper argument; an appellant must provide evidence to rebut the presumption. *Id.*

Trial counsel may comment on an accused's failure to express remorse, provided a proper foundation is laid. *United States v. Paxton*, 64 M.J 484, 487 (C.A.A.F. 2007). A proper foundation is laid for trial counsel to comment on an appellant's failure to show remorse when an accused has "made an unsworn statement and has either expressed no remorse or his expression of remorse can be arguably construed as being shallow, artificial, or contrived." *United States v. Edwards*, 35 M.J. 351, 355 (C.M.A. 1992) (citing *United States v. Gibson*, 30 M.J. 1138, 1139 (A.F.C.M.R. 1990)) (additional citation omitted).

### 3. Analysis

Trial defense counsel did not object to either line of argument Appellant now asserts was impermissible. Accordingly, we review for plain error. *Voorhees*, 79 M.J. at 9. We consider each alleged impermissible argument in turn.

#### a. Trial counsel's comments regarding victim

Trial counsel arguably commented on the impact of Appellant's offenses on the victim twice during her sentencing argument. At the beginning of her argument trial counsel asserted JA's "life ha[d] been fundamentally altered" by Appellant's actions and JA "had to pay a certain price for those actions." Later in her argument, trial counsel more subtly commented on the victim when contending that Appellant had low rehabilitative potential because his unsworn statement contained "nothing . . . that indicates he truly understands the impact that his actions have had on her," thus implying Appellant's actions, in fact, had an impact on JA.

We need not decide whether trial counsel's comments constituted impermissible argument or constituted "reasonable inferences fairly derived from [the] evidence." *Halpin*, 71 M.J. at 479 (internal quotation marks and citation omitted). Even if the comments exceeded reasonable inferences, under the factors our superior court identified in *Fletcher*—(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the sentence—we find no prejudice in the purported improper argument. 62 M.J. at 184.

Regarding the severity of trial counsel's alleged misconduct, trial counsel's comments on the impact on JA of Appellant's offenses that arguably extended beyond admitted evidence were brief, limited, and neither central to the argument nor repeated over and over. Moreover, even if the comments exceeded reasonable inferences, the extent to which they did so was not severe. The lack of severity of trial counsel's comments may also be suggested by the fact that neither trial defense counsel nor the military judge objected to the comments. This lack of a defense objection is "some measure of the minimal impact of a prosecutor's improper comment." *Gilley*, 56 M.J. at 123 (citation omitted). This lack of objection also meant that no curative measures—*Fletcher*'s second

factor—were taken explicitly on the record by the military judge. But we presume military judges know the law and follow it, "absent clear evidence to the contrary." *Erickson*, 65 M.J. at 225 (citation omitted). In this case there is no evidence that trial counsel's comments impacted the military judge's ability to "filter[ ] out" improper argument, *Robbins*, 52 M.J. at 457 (citation omitted), and we presume the military judge's filter fulfilled any necessary curative measure. In applying the third *Fletcher* factor, we consider the weight of the evidence supporting the sentence. For reasons discussed above in the context of Appellant's claim of inappropriate sentence severity, we find the weight of the evidence clearly supports the adjudged and entered sentence. Ultimately, trial counsel's comments on the victim give us no reason to believe that Appellant was not "sentenced on the basis of the evidence alone." *Halpin*, 71 M.J. at 480 (internal quotation marks and citation omitted). Appellant has "failed to establish that the weight of the evidence did not clearly support the adjudged and approved sentence." *Id.* We find Appellant has failed to meet his burden of establishing prejudice.

### *b. Trial counsel's comments on Appellant's lack of remorse*

Trial counsel referenced Appellant's brief apology to JA in Appellant's written unsworn statement while arguing that because Appellant had not demonstrated an understanding of how his actions had impacted JA, Appellant had no rehabilitative potential. Appellant contends this constituted arguing lack of remorse without foundation. It is not entirely clear whether trial counsel's argument was a comment on Appellant's lack of remorse or a comment on Appellant's lack of understanding or recognition of how JA may have been impacted by his actions. Arguing that an accused has not recognized the impact of their actions on a victim is not the same as arguing an accused's apology is insincere. In fact, trial counsel did not make a generalized claim that Appellant lacked remorse. Moreover, trial counsel's statement that Appellant's brief apology to JA contained no indication that he understood the impact of his actions on JA was arguably correct, limited, and avoided the error of arguing facts not in evidence.

To the extent we consider trial counsel's comment on Appellant's apology to JA being a "one-line sentence" as implicit argument that Appellant lacked sufficient remorse, the requisite foundation to permit such argument is that an appellant has "made an unsworn statement and has either expressed no remorse or his expression of remorse can be arguably construed as being shallow, artificial, or contrived." *Edwards*, 35 M.J. at 355 (citation omitted). Appellant mentioned JA in just two of the nearly 100 sentences in his written unsworn statement. Based on the context, this could be construed as a shallow expression of remorse. *Id.* A sufficient foundation was laid to permit trial

counsel's brief comment on it in this case. Based on the facts of this case, trial counsel's limited comment did not constitute error.

Moreover, even if trial counsel's brief comment was error, Appellant has failed to demonstrate prejudice. As with trial counsel's comments on purported victim impact discussed above, Appellant fails to establish prejudice under the *Fletcher* factors. The purported misconduct was not severe, no curative measures other than the military judge's presumed ability to filter out improper argument was required, and the weight of the evidence supports the sentence. Taken as a whole, we find trial counsel's comments were not so damaging that we cannot be confident that Appellant was sentenced based on the evidence alone. *Halpin*, 71 M.J. at 480. We find Appellant has failed to meet his burden of establishing plain error and prejudice therefrom.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court